## Julius Winter, Jr. & Co. v. Forrest

(Decided November 28, 1911.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

Surety on Bond—Protection of the Law—Disclosures Relative to Employees Reliability—Presumption of Surety.—Where the surety on a bond for the payment of money wants the protection of the law, he must give the obligee an opportunity to make disclosures relative to any fact touching his employees honesty and reliability, to the best of his knowledge, and until such opportunity is given it must be conclusively presumed that the surety is satisfied to act upon his own initiative, or on such information as the obligee gives him, and in such case the surety may not escape liability on the ground that the obligee failed to disclose to him information

possessed by the obligee at the time, which if given, would have increased the risk of the surety and possibly prevented him from signing the bond.

KEITH L. BULLITT, CLARENCE C. SMITH, BRUCE & BULLITT for appellant.

D. K. MOXLEY, GIFFORD & STEINFELD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Julius Winter, Jr. & Company, are merchant tailors in Louisville, Kentucky. For some years they operated a branch store in Memphis, Tennessee, with Frank M. Simpson in charge. Prior to 1902, it appears that Simpson was short in his accounts, and his employers demanded of him a bond to indemnify them against any loss arising in the future from this source. He executed a bond for $1,500.00, with George L. Forrest and two others as sureties. In January, 1902, these sureties were called upon by Winter & Co. to meet a shortage in the account of Simpson, amounting to fifteen hundred and some odd dollars. Of this sum Forrest paid in satisfaction of his part thereof $530. In December, 1906, he instituted a suit in the Jefferson Circuit Court against Julius Winter, Jr., & Co., in which he sought to recover of them the money so paid by him, on the ground that, in the execution of this bond, he had been misled and deceived by Winter to his prejudice. In other words, a fraud had been practiced upon him. He charged that Winter had represented to him, in order to induce him to sign the bond as surety for Simpson, that Simpson was a trustworthy, reliable employe, and that the execution of the bond was a mere matter of form. The defendants answered, traversing the material allegations of the petition, and pleaded the statute of limitations, and set up a small indebtedness on the part of the plaintiff to them by the way of counterclaim.

Upon the trial plaintiff testified for himself to the facts set out in his petition; that he did not discover the previous shortage of Simpson until just a short time before he instituted the suit; and introduced other witnesses tending to corroborate his statement of the way and manner in which the bond was executed and the circumstances leading up to its execution. Defendant testified that, because of Simpson's shortage, he was about to discharge him, and Simpson requested him to accept

a bond, indemnifying the company against further loss, and give him another chance; that defendant agreed to this arrangement, and without any knowledge on his part as to whom he proposed to give as surety, he, Simpson, caused the bond to be executed in Memphis, and mailed it to the defendant in the City of Louisville, and until it was received they did not know that plaintiff was a surety on it; that they were not present when the bond was executed; not only did not solicit the plaintiff to sign it, but did not know that he had done so until the bond, in its completed form, was delivered to them in the City of Louisville; that at no time prior to its execution did they discuss the matter with plaintiff; that they made no representations to him, and had no occasion to withhold any from him; and that the bond was signed by him at the instance and request of his friend Simpson. On this evidence the case was submitted to a jury, with the result that the plaintiff recovered a verdict for $500.00, with interest from January, 1902, and found for plaintiff on the counterclaim.

The defendants appeal and seek a reversal on the ground that the court did not properly instruct the jury. The following instructions were given:

"When the money that was paid on the bond by the plaintiff Forrest to the defendant Winter, in regard to which you have heard testimony, to-wit, $500.00, the law of the case is for the plaintiff Forrest against the defendant Winter in the sum of $500.00, with or without interest from the date of its payment, January, 1902, as you believe is right and proper under the circumstances, unless you shall believe that as much as five years next before the institution of this suit, to wit, the date of the institution of this suit, February 12, 1907, the plaintiff, George L. Forrest, knew or had been informed that Simpson had, prior to the execution of his bond as surety, been a defaulter, or short in his accounts with the defendant, Winter. But if you believe from the evidence in the case that at the time Forrest paid the money on the bond, or at any time five years prior to the date of the institution of this suit, Forrest learned that before he had executed the bond Simpson had been short with Winter, then the law of the case is for the defendant Winter as to the $500.00, and you should so find.

"As to the account, gentlemen, the law of the case is for Winter against Forrest, and you should so find for Winter in the sum of $93.75 on the account, with or with-

out interest, as seems to you proper under the circumstances; unless you shall believe from the evidence that the account had been fully paid by Forrest to Winter before the institution of this suit, the law as to the account is for Forrest, and you should so find.

"If you find for Forrest against Winter on the $500.00 paid on the bond, and you find for Winter against Forrest on the account, $93.75, or any part thereof, you will deduct from the $500.00 you find in Forrest's favor against Winter such sum on the account not exceeding $93.75 as you find in favor of Winter against Forrest on the account, and your verdict will represent the difference."

The plea of limitation was successfully met by plaintiff in his evidence, so that the only remaining question is, was the other issue of fact, as raised by defendant in his answer and supported by evidence, presented to the jury at all? We think not. Instruction No. 1 was clearly bottomed upon the idea that, unless the plaintiff knew or discovered more than five years before the institution of his suit, that Simpson had been short in his accounts before the bond was executed, then he was entitled to recover. This was, in fact, a peremptory instruction for the plaintiff, and defendant's theory of the case was utterly ignored. In other words, the court must have been of opinion that the matter as to the manner of the execution of the bond as set up in the answer did not constitute a defense.

In 1 Story's Equity Jurisprudence, sec. 215, the author says:

"Thus, if a party taking a guarantee from a surety conceals from him facts which go to increase his risk, and suffers him to enter into the contract under false impressions as to the real state of facts, such concealment will amount to a fraud, because the party is bound to make the disclosure, and the omission to make it under such circumstances is equivalent to an affirmation that the facts do not exist."

This same principle was thus announced by this court in Graves, etc. v. Lebanon National Bank, 73 Ky. (10 Bush) 23:

"There is no principle of law better settled than that persons proposing to become securities to a corporation for the good conduct and fidelity of an officer to whose custody its moneys, notes, bills and other valuables are entrusted have the right to be treated with perfect good

faith. If the directors are aware of secret facts materially affecting and increasing the obligation of the sureties, the latter are entitled to have these facts disclosed by them, a proper opportunity being presented."

The foregoing statement of the duty imposed upon the obligee to the surety on the bond of an obligor is universally recognized; but to this rule, as to all others, there are exceptions, one of which is presented by the issue in this case. As said in the Graves case, this duty to make the disclosure rests upon the obligee in all cases where "a proper opportunity is presented." Clearly, if the obligee had nothing whatever to do with the execution of the bond, and the surety was induced by the employe alone to sign the bond, without the knowledge of his principal and in the absence of the principal, it would be a manifest injustice to hold the bond invalid as to the surety because the principal had not disclosed to him such facts as he may have known bearing upon the employe's honesty and integrity, for no opportunity was given him to make such a disclosure. In such case, if the surety wants the protection of the law, he must give to the obligee an opportunity to make disclosures relative to any fact touching his employe's honesty, reliability, etc., within his knowledge, and until such opportunity is given it must be presumed, and conclusively presumed, that the surety is satisfied to act upon his own initiative, or such information as the obligor gives him; and in such cases the surety may not escape liability on the ground that the obligee fail to disclose to him information possessed by the obligee at the time, which, if given, would have increased the risk of the surety and possibly prevented him from signing the bond.

This principle was well exemplified by this court in Burks v. Wonterline and wife, 69 Ky., (6 Bush) 20. In that case Wonterline and wife instituted a suit against John D. Ross and John Burks on a promissory note. Burks pleaded that he was surety merely for Ross, and that, without his knowledge or consent, the plaintiffs had accepted from Ross usurious interest at the rate of fifteen per cent during a period when the note did not call for interest at all, and that this fact was fraudulently concealed from him when he signed the note. This plea was not responded to, and judgment having gone against Burks, he appealed and sought a reversal. After reviewing the authorities and recognizing the principle that the

law casts upon the obligee in a bond the duty of fair dealing with the sureties for the obligor therein, this Court said:

"Unless the obligee knew when Burks signed the note that he did so as surety only, or unless she procured his signature, or was present when he signed, and then misrepresented or suppressed the truth, the acceptance of the note was not evidence of fraud, and the simple charge as made of misrepresentation and concealment does not show fraud, because the principal may have presented to her the note signed in her absence when she could have made no communication to the surety, and could, therefore, have been guilty of neither misrepresentation nor concealment; and the general allegation of concealment does not negative the idea of her absence."

Another case directly in point is Magee v. Manhattan Life Insurance Co., 92 U. S., 93, where Magee, as surety, had executed a bond to the Manhattan Life Insurance Co., to indemnify it against the defalcations of one of its agents. Suit was instituted upon the bond, and Magee defended upon the ground that the agent had defaulted prior to the execution of the bond, and that this fact was concealed from him, or not known by him, when the bond was executed. It appears there, as in the case at bar, that the company, in avoiding the effect of this plea, stated that the bond was executed in Mobile, Alabama, and mailed to it in New York, and the Supreme Court, in holding that the surety under the state of facts presented was liable, expressly approved the case of Burks v. Wonterline and wife, supra, and in dealing with the principle therein announced, said:

"The creditor is under no obligation legally or morally to search for the surety and warn him of the danger of the step he is about to take. No case has gone so far as to require this to be done. The creditor is not bound to inform the intended surety of matters affecting the credit of the debtor, or of any circumstances unconnected with the transaction in which he is about to engage. * * * * * * Nor is it averred that the company was aware that the sureties were ignorant of the facts complained of. It is, perhaps, to be inferred from the plea that the fact was—as the record aside from the plea shows it to have been—that the bond was executed in Mobile and sent by Vorhees by mail to the company in New York. If this were so the company upon receiving it was under no obligation to make any communication

to the sureties. The validity of the bond could not depend upon them doing so. The company had a right to presume that the sureties knew all that they desired to know and were content to give the instrument without further information from any source."

In principle the reasoning of the court in the foregoing cases is identical with the plea and evidence of the appellant Winter, and if true, this plea presented a perfect defense. The jury should have been instructed upon each theory of the case, to-wit, if they believed from the evidence that the appellant Winter, prior to the execution of the bond, represented to the appellee that his employe, Simpson, was an honest, trustworthy and reliable man, or, if present when the bond was executed, and he failed to advise Forrest of the fact that Simpson had theretofore defaulted in his accounts, then they should find for the plaintiff; if, on the other hand, they believed from the evidence that the defendant was not present when the bond was executed, and had no conversation with Forrest in regard to the bond prior to its execution, and made no representations to him as to Simpson's honesty, reliability, etc., then they should find for the defendant.

Judgment reversed and cause remanded for further proceedings consistent herewith.