## Leslie v. Consolidation Coal Company.

(Decided November 9, 1916.)

### Appeal from Johnson Circuit Court.

1. **Master and Servant—Scope of Servant's Employment.**—The master is not liable for the acts of his servant, unless they are done within the scope of his employment, and within the authority given him by his employment; but if such acts are done within the scope of the employment of the servant, the master is liable for the consequences, even though the acts of the servant be willful and malicious.

2. **Master and Servant—Liability for Acts of Servant.**—Where a servant whose duty it was to perform any act which the master might direct, and with no specific employment, while engaged in the performance of any general duties to the master, undertook to sprinkle the streets in front of a store of the master in order to cool the atmosphere and settle the dust, without being directed by the master to do so, he is engaged in an undertaking of his own and not that of the master, and if he should throw water upon another, either purposely or accidentally, the master is not liable for the damages produced.

VAUGHN & HOWES for appellant.

O'REAR & WILLIAMS and FOGG & KIRK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Rebelling against a shower bath administered to him by means of a hose in the hands of Harry Walters on the afternoon of September 6, 1913, in the town of Van

Lear, Kentucky, the appellant brought this suit against Walters and the Consolidation Coal Company charging that the former at the time was the agent of the latter, and was performing duties within the scope of his employment, and that besides contracting a cold as a result of the operation, he was greatly humiliated, and suffered mental pain and anguish, for which he sought to recover damages in a total sum of $5,000.00.

A general denial contained in the answer made the issue, and upon trial there was a verdict against the defendant, Harry Walters, for the sum of $500.00. By instruction from the court the jury returned a verdict in favor of the corporation defendant, and to reverse this ruling of the court this appeal is prosecuted.

The facts in the case appear to be substantially as follows: The corporation defendant, to whom we shall hereafter refer as the Coal Company, operates quite an extensive mining interest in the town of Van Lear, which has a population of something like one thousand people. It owns practically all of the town, including both dwelling and business houses, in one or more of the latter of which it operates a store or stores from which its employees may be supplied with necessary goods and wares for household purposes. On the opposite side of the street from one of these stores is the postoffice. As a means of protecting its property from fire, and for the comfort and convenience of the inhabitants of the town, the Coal Company had constructed a water works plant, and as a part of the apparatus for extinguishing fire it had procured hose and perhaps carts and other facilities which were kept in a small building known in the record as the hose house. This, of course, was kept locked when there was no need to use any of its contents, but the key thereto was kept in a small glass receptacle at some place near the door in order to enable anyone, in cases of emergency, to break it and procure the key with which to unlock the hose house. There had been a voluntary fire company organized in the town, with the defendant, Walters, filling the distinguished position of chief of the fire department. He had also been honored by his fellow-citizens with the position of deputy city marshal. Although thus burdened, he seems to have had time to discharge his duties to the Coal Company coming within the scope of his employment by it as one of its employees. According to the testimony he

seems to have been a handy man about the mines, whose duty it was to perform anything which he might be told to do, having no regularly assigned duties, except, perhaps, that he investigated the facts in connection with the happening of any accident to any employee engaged in the mines. The afternoon in question was very sultry, and not having been assigned to any work for the Coal Company the fire chief, who seems himself to have carried a key to the hose house, concluded that it might administer to the comfort of the inhabitants, as well as the travelers on the highway, for the street to be sprinkled and the dust settled at a point somewhere between the store and the postoffice. He thereupon, without any directions from the Coal Company, obtained the hose from the hose house and attached it to a convenient hydrant and began to sprinkle the street in an effort, as he says, to settle the dust and to cool things off. While thus engaged he, either accidentally or purposely (but which one or the other cannot, as we view it, affect this case) turned the hose on the appellant, which, instead of cooling him off, made him exceedingly hot, and resulted in his filing this suit.

It is seriously contended on behalf of appellant that Walters at the time was engaged in performing duties which he owed to his principal by virtue of his employment. This contention is based upon the statements of the superintendent of the Coal Company to the effect that it was the duty of Walters to look after the property of the Coal Company if necessary. It is argued that Walters may have concluded that it was necessary for the preservation of the company's merchandise in its store to settle the dust in the streets so as to prevent it from flying into the store and injuring the contents. In this connection it might be well enough to say that no such purpose, according to Walters' testimony, prompted him to undertake the sprinkling of the streets. On the contrary, he says that he did this of his own volition, in order to cool the atmosphere and to make the immediate locality more comfortable by settling the dust. However this may be, it is perfectly clear that the street as a highway was not the property of the company, nor did it have any special interest in the dust. This was a public thoroughfare, and although the sprinkling of it may have incidentally and remotely, as well as slightly, benefited the Coal Company by temporarily preventing

a small amount of dust from entering the store, still it is easy to see that the public generally was the much larger beneficiary from having the dust settled than was the owner of the store.

Appellant relies upon the case of Robards v. P. Bannon Sewer Pipe Company, 130 Ky. 380, and kindred cases. In that case the night watchman of the Sewer Pipe Company, whose duty it was to guard and protect its property and to prevent trespassers from coming thereon, and to remove them if they should be upon the property, in the discharge of his duty used more force than was necessary to eject the plaintiff, who was a trespasser upon the property, by shooting him while he was running away from the premises. This was charged in the petition to have been done with wilful, gross and reckless negligence, but a demurrer was sustained thereto and the petition dismissed. The judgment was reversed by this court upon the ground that, according to the allegations of the petition, the watchman was engaged within the scope of his employment at the time he inflicted the injuries on plaintiff, and that the master could not be relieved of the consequences of the servant's act because the latter used more force than was necessary to accomplish the purpose of his employment. Manifestly this is in harmony with the well established rule upon the subject, and will no doubt be applied in the future to all kindred and similar circumstances. But, as we have seen, the facts in this case are entirely dissimilar. Walters was not employed to sprinkle the streets, neither had he been directed to do so on the particular occasion. This was the first time that he had ever attempted to do so. Having access to the hose house by virtue of being chief of the fire department, he concluded that he would be rendering a public service to allay the dust and cool the atmosphere. Clearly he was no more in the employ of the Coal Company while thus engaged than he was in the employ of any other citizen of the town. It certainly could not have been in the contemplation of the Coal Company when it employed Walters that he might on some occasion conceive the idea of sprinkling the streets and would, while doing so, throw water upon a citizen, from which damages would result and for which the company would be liable. The case, as we view it, comes clearly within the principle found in the two cases of Ballard's

Admx. v. L. & N. R. R. Company, 128 Ky. 826, and C. & O. R. R. Co. v. Ford, 158 Ky. 800, and cases therein referred to.

In the first case mentioned the facts are much stronger in favor of the right of the plaintiff to recover of the principal than they are in the case we now have under consideration. The offending servant in that case was shown to have possessed a careless, reckless and even dangerous disposition, which qualities characterized his acts and were known to the principal. It was also shown, that with this knowledge the principal permitted the servant to handle and use the air hose in its shops, and on one occasion he turned the hose upon a fellow servant, who was, like himself, an apprentice in the shop, whereby injuries were inflicted resulting in the death of the injured servant. This court held that there was no liability of the master, saying in substance that the incident was but the playing of a prank and was performed outside of the duties of the guilty servant. Upon the crucial point in the case this court said:

"The master in selecting his servants is not required to take into consideration the pranks which the servant may play on his fellows outside of the scope of his duties. The master has no right to control his servant outside of his service as to the pranks he may play on his fellows. As to these, the master is under no greater responsibility to the fellow servant than to a stranger. If Ballard (the deceased) had not been in service of the railroad company, it would hardly be maintained that the company would be responsible to him on the facts alleged."

In other words, there is no difference in principle whether the prank is played upon another servant or upon a stranger, as was the plaintiff in the instant case. Liability of the master is not made to rest on the fact that the guilty party was at the time his servant, but it must appear that such servant was, at that time, engaged in performing duties to his master. In the Ford case, *supra*, the ground of plaintiff's action was stated to be that he was walking along by the side of one of the engines of the defendant and just as he had passed the cab of the locomotive he was struck by a stream of hot water with such force as to knock him down. That at the time he heard someone in the cab say, "Now,

damn you, keep off of there;'' that after he was knocked down, and while he was down, the water was continued to be thrown upon him. It was held by this court that these facts did not manifest a cause of action in favor of the plaintiff against the defendant railroad company, because the act complained of was shown to have been wilful, and perpetrated wholly without the scope of the authority of the servant who did it. In so holding the court said:

"But there is no claim by the plaintiff that any duty was being performed by the company's servants at the time they threw the hot water upon plaintiff; in fact, all the evidence for plaintiff goes to show upon the part of such servants, a wilful and deliberate departure from the course of their employment, and the performance by them intentionally and wilfully of an act wholly without the scope of their authority; and under this state of fact, the lower court erred in overruling the motion to defendant to direct the jury to find a verdict for it.''

So, whether the act of Walters in the instant case be regarded as the mere playing of a prank, or wilful and malicious, the Coal Company cannot be held liable therefor, as he was not engaged at the time in serving his master within the contemplation of his duties as disclosed by the record.

The trial court having so held, its judgment is affirmed.