## Louisville & Nashville Railroad Company v. McCoy.

(Decided October 26, 1917.)

### Appeal from Laurel Circuit Court.

1. Trial—Instructions to Jury.—In a civil case, the court is not required to instruct upon a question of law, which is involved in the case, unless it is asked to do so, but if a party offers a written instruction upon the point of law involved, and it is rejected, because it is defective in form or substance, the court should then prepare or cause to be prepared and give a proper instruction.

2. Trial—Instructions to Jury.—It is not reversible error to reject an offered instruction, if the court, by an appropriate instruction, covers the point involved, and the litigant receives the benefit, by the instruction given, of what he was seeking by the instruction offered by him and refused.

3. Evidence—Parol Evidence to Prove Contents of Writing.—Parol evidence is not admissible to prove the contents of a writing, where the writing is in existence and under the control of the party who offers the parol evidence of its contents.

4. Master and Servant—Not Liable for Malicious Act of Servant.— The master is liable for the wilful and malicious act of his servant, when the act performed is one within the scope of the authority of the servant, and in the line of his duties, and the fact, that the servant does it in a brutal way and with unnecessary violence, does not excuse the master.

BENJAMIN D. WARFIELD, GEORGE G. BROCK and H. J. JOHNSON for appellant.

J. M. ROBSION, G. T. RADER and L. P. THOMPSON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellee, John McCoy, by his petition and amended petitions, substantially alleged, that by the invitation of the persons in charge of a train of appellant, he got upon the train to ride a short distance to where the train would make another stop, and that shortly after the train started from the point, at which he had gotten upon it, one of the servants of appellant undertook to require him to leave the train, while it was running at a high speed, and upon his failure to leave the train, the employe, who had directed him to leave it, wrongfully, wilfully and maliciously, with a hose from which could be ejected hot water, poured a stream of hot water upon him, thereby greatly scalding his back and limbs, and from the effects of which he was unable to do any kind of labor, from that time, until the time of the bringing of the suit, and that his power to earn money was permanently impaired; that he was a coal miner at the time he suffered the injury, and received a wage of two dollars and twenty-five cents per day, and that the time he lost before he was able to labor again was seventy-five days, and prayed for a recovery for one hundred and fifty-five dollars for the time lost by him, and other damages for the pain and suffering endured by him, and the permanent impairment of his power to earn money, in the future, in the sum of fifteen thousand dollars. The appellant, by its answer and amended answers, and by agreements of record, traversed all the allegations of the petition and its amendments, and in addition thereto affirmatively averred that the appellee was a trespasser upon its train, and that if he suffered any injuries, which it denied, they were caused by its servants in the performance of their duties, and without any knowledge, at the time, that the appellee was upon the train, and without any intention to do him harm; and the further averment, that if its "engineer squirted or threw hot water upon the appellee intentionally or maliciously," that it was done by him on his own account, and was an act not within the scope of his employment and not in the performance of any duty, which the appellant had employed him to do. The affirmative averments of the answer and amended answers were, by agreement of parties, taken as controverted upon the record.

Upon the issues thus made, a trial was had before the court and a jury, which resulted in a verdict and judgment in the sum of five hundred dollars in favor of the appellee.

The appellant filed grounds and entered a motion for a new trial, which was overruled, and it has appealed, and seeks a reversal of the judgment for the reasons hereinafter indicated.

The evidence offered for the appellee, if believed, proved, that while the train, which consisted of an engine and tender, one flat car loaded with steel rails, and a caboose, was standing at the station, one of the brakeman attached to the train told him, that the train would stop at a point a mile or a mile and one-half away, and that he could ride upon the train to that point; that when he got upon the train, he stood upon the flat car, and after the train had proceeded a short distance and was running at a speed of about thirty-five miles an hour, the engineer, while standing and looking directly at him, waived his hand toward him and directed him to get off of the train; that he was unable to do so, because of the speed of the train, when the engineer, taking a hose in his hand and standing upon the coal in the tender, ejected hot water upon him, and to escape it, he retreated toward the other end of the flat car and maneuvered from side to side upon the car, but that the engineer held the hose directly in his direction and continued to eject from it a stream of hot water; that when the train stopped, he got down from it and went to his home; that the pain produced by the hot water was very great, and that his back was, in a large degree, scalded from the waistband of his pantaloons up to his neck, and was covered with large blisters, caused by the scalding, which generated into sores, and that he was confined to his bed for two weeks, and was unable to work thereafter for several months; that he was receiving two dollars and twenty-five cents per day as a coal miner at the time he received the injury and thereby lost all of the time mentioned; that his strength and ability to labor was permanently impaired, in that the injury had affected his kidneys, which necessitated his urinating very frequently and a portion of the time within every twenty or thirty minutes. It was further shown by an examination, at the time of the trial, that several scars were still visible upon the appellee's back, as a result of the alleged scalding.

The evidence for appellant, if believed, proved that the train was not a passenger train, at any time, but was a freight train; that no one of the employes in charge of the train had given any permission to McCoy to get

upon it or ride upon it; that the engineer, while McCoy was upon the train, made use of the hose, which is connected with the engine and the hot water system upon the train, for the purpose of wetting the coal in the tender and thereby to allay the dust from it; that at the time he used the hose, he did not see McCoy and did not know that he was upon the train or in a place where the water could have descended upon him, and that he had no intention or purpose of pouring the hot water upon him, but that a small portion of the water did pass over the coal in the tender and fall upon McCoy. The appellant, also, offered evidence, which tended to prove, that McCoy was not injured, and that he did not lose any time from work and was engaged in work immediately after the alleged injury. The proof for appellant, also, tended to prove that the engineer in charge of the train did not order or request McCoy to leave the train, and did not pay any attention to him, and made no effort of any character to remove him from the train.

At the conclusion of the evidence, the court gave to the jury four instructions, by the first of which the jury was advised, that if the engineer attempted to force McCoy to leave the train upon which he was riding, while the train was in motion and that for the purpose of making him leave the train, the "engineer intentionally threw, pumped or squirted hot water upon him," and thereby scalded and injured him, then the law was for the appellee and the jury should so find. In the event a finding should be for the appellee, the jury should award him such sum in damages, as, from the evidence, it might believe would reasonably and fairly compensate him for such injuries, including any mental or physical pain or suffering, which he was caused to endure, or which, from the evidence, it was reasonably certain he would thereafter endure, and which was caused directly and proximately by the injury, if any, and for any loss of time occasioned by the injury, if any, but not in excess of one hundred and fifty-five dollars, and for any permanent reduction of his power to earn money, if any; but if it should allow anything for loss of time and permanent impairment of power to earn money, the allowance for the impairment to earn money should begin when the allowance for the loss of time, if any, was made, should end, but in all not to exceed fifteen thousand dollars. The second instruction advised the jury that the appellee was a trespasser upon the appellant's train, at the time com-

plained of in the petition, and that he was without right to be thereon, and that the servants of appellant in charge of the train did not owe him any duty, except not to intentionally injure him, and that they had a right to use such reasonable force as was necessary to require the appellant to leave the train without personal injury to him, and that before the jury was authorized to find for the appellee, it must believe from the evidence, that the "engineer intentionally threw, pumped or squirted hot water upon him, for the purpose of forcing him to leave the train," and that he was thereby injured, and that unless the jury so believed, the law was for the appellant and the jury should so find. The jury was further advised by this instruction that it was the duty of appellant's servants in charge of the train, in attempting to remove the appellee from it, if the engineer did so, to stop the train before he was ejected from it, or to reduce its speed so that he would incur no danger of injury in being ejected from it. By the third instruction the jury was advised, that if it believed that the appellant's engineer "intentionally" pumped or threw the hot water upon the appellee, but that he did such on his own account, and without intention or purpose to require the appellee to leave the train, then it should find for the appellant. The fourth instruction related, only, to the manner of making and returning the verdict.

(a) The appellant offered an instruction, which the court refused, which in effect directed the jury, that, although it might believe that the engineer did throw the hot water upon the appellee, but if, at the time, the engineer did not know that the appellee was upon the train, it should find for the appellant. The refusal to give this instruction is insisted upon as a prejudicial error. This contention is based upon the fact that the court had instructed the jury, that if the appellant's engineer, in attempting to force the appellee to leave the train, intentionally threw the hot water upon him, it should find for the appellee, and that the refused instruction was the converse of that and should have been given in order to submit to the jury the appellant's theory of the case—its theory of the case being, first, a denial that any water was thrown upon him; second, if any water was thrown upon him that the engineer was without knowledge of his presence; and, third, that if the engineer threw water upon him intentionally and with knowledge of his presence, it was an act done by

the engineer without the line of his duty and scope of his authority, and for which the appellant was not liable. It was further insisted, that if the refused instruction was not the proper one in form or substance, the court should have prepared and given one, which was correct. In support of this contention the counsel of appellant have cited many adjudications of this court, which they insist justify their position. The contention is correct, that each party to a suit has the right to have the jury so instructed as to present its theory and side of the case, and oftentimes judgments have been reversed because of the failure of the court to so instruct the jury. I. C. R. R. Co. v. Dallas' Admr., 150 Ky. 446; L. & N. R. R. Co. v. Harrod, 115 Ky. 877; Chicago Veneer Co. v. Jones, 143 Ky. 26; Chas. Taylor Sons & Co. v. Hunt, 163 Ky. 120; L. H. & St. L. Ry. Co. v. Roberts, 144 Ky. 820; L. & N. R. R. Co. v. King's Admr., 131 Ky. 847; L. & N. R. R. Co. v. Schoemake's Admr., 161 Ky. 746. While the court is not required, in a civil case, to instruct upon a legal point involved in the case when an instruction upon it is not asked, but when the party offers an instruction upon the point involved and the court rejects it, because it is defective in form or substance, it becomes the duty of the court to prepare or cause to be prepared and to give a proper instruction upon the point. So when, although an instruction is asked by a party upon a point of law involved in the case, it is not a reversible error to reject it, if the court, by an appropriate instruction, embraced the point involved and substantially gives the litigant the benefit, by the instruction given, of what he was seeking by the instruction offered by him and rejected. It will be observed in this connection, that the first instruction and the only one, which presented the appellee's theory of the case or under which the jury could find for him at all, required the jury, before it could find for appellee, to find from the evidence, that the engineer intentionally cast the hot water upon the appellee, and for the purpose of requiring him to leave the train. This entirely precluded it from finding a verdict for appellee, if the engineer had carelessly or negligently or unwittingly thrown the hot water upon him. The further requirement of the instruction, that the engineer must have intentionally cast the water upon appellee, in an endeavor to compel him to leave the train, precludes the idea, that the jury could find a verdict for him, if the engineer had thrown the

water upon him without knowledge, at the time, that he was upon the train. There was no evidence offered by appellee, in support of his cause of action, that even tended to prove that the engineer ejected the water upon him, not knowing of his presence, but all the evidence upon which appellee could succeed, in his action, proved an intentional casting of the water upon him by the engineer, with full knowledge of his presence. It will, also, be observed that the second instruction given by the court advised the jury, that the appellee was a trespasser upon the train, and was without right to be there, and that the employes of appellant in charge of the train did not owe him any duty, except to refrain from doing him intentional personal injury, and that a verdict should not be found for him, unless the ''engineer did intentionally throw, pump or squirt hot water upon him for the purpose of forcing him to leave the train.'' It is readily apparent, that under the instructions, a verdict could not have been returned against appellant, if the engineer had thrown the hot water upon appellee in ignorance, at the time, of his presence upon the train. In such state of case the act could not have been intentional or with the purpose of forcing him to leave the train. The appellant could have, in no event, been liable for the act of the engineer, unless the engineer knew that appellee was upon the train, for although he had not intentionally thrown the water upon him, neither could he have negligently done so, without knowledge of his presence on the train. Hence, the instructions given substantially directed the jury not to find for the appellee, if the engineer threw the water upon him in ignorance of his presence upon the train. It does not seem possible that the jury could have misconceived the import of these instructions or been mistaken in their directions. While the question as to whether the appellee, under the proof, was a trespasser upon the train or a licensee, is not determined, the second instruction, by advising the jury that he was a trespasser, was certainly not prejudicial to the appellant. Neither was the fact that the court, by its instructions, precluded the jury from finding for the appellee, if the water had been thrown upon him negligently, prejudicial to appellant.

(b) Upon the trial the appellant offered parol evidence which tended to prove that the engineer had no authority to require a trespasser to leave any portion of the train, except the engine, and that, if he should un-

dertake to do so, it would not be within the scope of the authority vested in him by his employer, nor in the line of his duties. It was proven by the same witness, however, that the appellant had a printed book of rules, which defined the authority and duties of the various train men, including the engineer. The book was not offered in evidence, and, upon objection to the proof of its contents, by parol, the court excluded any parol evidence with reference to the authority of an engineer to require a trespasser to leave the train, which he was in charge of, and of this ruling the appellant complains. In this the court was not in error, as a primary principle of the law of evidence requires a party to always offer the best evidence of a fact, that is possible, and under this principle, parol evidence of the contents of a writing, which is in existence and under the control of the party offering the evidence, is not admissible. 10 R. C. L., sections 54, 55.

(c) The appellant, also, offered an instruction to the jury, that it was not liable for a wilful and malicious act of the engineer outside the scope of his authority and the line of his duties, and although the jury should believe that the engineer threw hot water upon the appellee, but should further believe from the evidence that the act was without the scope of the engineer's employment and not in the discharge of any duty, which he owed to appellant, it should find for the appellant. The court rejected the instruction, but instead gave instruction 3, which seems to embrace all to which appellant was entitled upon that phase of the case. Of course, a mere assault and battery by the engineer upon appellee, while upon the train, disconnected with anything in the operation of the train and of any duty of the engineer to his employer, could not be considered as within the apparent scope of his authority as an engineer, and the master could not be liable, but when the act of scalding the appellee was connected with the performance of an act, which, under the terms of his employment, the engineer had authority to do, the mere fact that he did it in a reckless and brutal way and with unnecessary violence, will not relieve the master from liability. Lexington R. R. Co. v. Cosine, 111 Ky. 799; Wise v. West Covington & Cincinnati Ry. Co., 91 Ky. 537; Williams v. Southern Ry. Co., 24 R. 2214; New Ellerslie Fishing Club v. Stewart, 29 R. 414; I. C. R. R. Co. v. West, 22 R. 1387; Thurman v. L. & N. R. R. Co., 17 R. 1343; Smith v. L. & N.

R. R. Co., 95 Ky. 16. The master is liable for the malicious act of his servant when the servant is acting within the scope of his authority and the line of his duty. If the removal of a trespasser or a licensee from his train was in the line of the duty of the engineer and within the scope of his authority from the appellant, the manner of the attempted removal was flagrant and illegal, but the appellant was liable, as it set the servant in motion, and the courts will not undertake to draw the precise line of distinction between the act of the servant and the individual. The instruction given sets out the distinction between the kind of act of the servant for which the master is liable and the act of the servant for which the master is not liable, the distinction being, that if the act is done in the line of the duty and scope of the authority of the servant, in the conduct of the master's business, the master is liable, otherwise he is not.

(d) All of the instructions are complained of, because it is insisted that the court, in them, assumed that the removal of a trespasser from the train was an act within the scope of the engineer's authority. Of course, if it was not within the apparent scope of the engineer's authority, as a servant of appellant, to require the appellee to remove from the train, the appellant is in nowise liable for any unlawful act of the engineer in attempting to eject him. Ballard's Admrx. v. L. & N. R. R. Co., 128 Ky. 826; Sullivan v. L. & N. R. R. Co., 115 Ky. 447; L. & N. R. R. Co. v. Routt, 25 R. 887; C. & O. Ry. Co. v. Ford, 158 Ky. 800; Leslie v. Consolidated Coal Co., 172 Ky. 121. The appellant, by its amended answer, averred that it was not within the scope of the engineer's duty, as a servant of appellant, to eject trespassers from the train, and that in fact, he was not authorized to do so, and that such an act was not in discharge of any duty he owed to his employer. This was, however, denied, and there was not any evidence bearing upon the issue. If the appellant should hold out the engineer as having authority to eject trespassers from the train, or was to knowingly permit him to exercise such authority, it would then as to third persons, become within the scope of his apparent authority, and the appellant would be liable for his acts. While there is not any evidence of the master holding out the engineer as having authority and a duty of doing the specific thing of requiring a trespasser to leave the train, or of

permitting him to exercise such authority, the facts do show that the engineer was then in charge of the engine, which was moving this freight or work train; was in the usual place of the performance of his known duties as a representative of the master, and no other servant of the appellant was where he could have exercised any authority, at the time in the matter. The engineer was apparently in control of the train, along with the others, in charge of the train, with the right to guard his master's rights with regard to it. One of the master's rights would have been to have removed a trespasser from the train. It is, also, apparent, that the appellee nor the public could have any knowledge of the precise duties, which the appellant required of its different servants in charge of a train, nor of any orders, which it may have given defining their authority and duties. The evidence of the specific duties assigned to the different members of the crew of such a train are matters within the peculiar knowledge of the appellant, and of which the appellee is not expected to have knowledge. The court was therefore not in error in holding that the engineer was within the scope of his authority, in requiring a trespasser to leave the train, when he was in the immediate presence of the engineer and when there was no evidence showing the contrary to be true, or that it was not in the line of the duty of the engineer to require a trespasser to leave the train.

(e) As the verdict of the jury expressly shows that it refused to find anything for appellant, on account of permanent diminution of his power to earn money, by reason of the alleged injury, no meritorious complaint can be made of the first instruction, which submitted to the jury for its consideration the evidence upon the subject of the permanent injury suffered by appellee, the contention of the appellant being, that the evidence was not sufficient of any permanent injury arising from the alleged assault and battery to justify the submission of the question of permanent injury to the jury.

(f) The original petition alleged, that by reason of the alleged injury the appellee had not been able to work at his usual employment, which was that of a miner, at two dollars and fifty cents per day, from the time of the injury up until the bringing of the suit, which was nearly one year, and issue was joined upon that allegation, but after the evidence had all been heard, the court permitted the appellee, over objection, to file

an amended petition, which alleged that the loss of time suffered was only seventy-five days, instead of nearly one year, and that the wages, which he received at his customary employment, and which he had lost, was two dollars and twenty-five cents per day instead of two dollars and fifty cents as alleged in the petition. This amendment was filed, as alleged, for the purpose of making the pleadings conform to the facts in evidence. The appellant complains of the filing of the amended petition, but it is impossible to see how the court abused its discretion in permitting it to be done, or how it worked any hardship or injury to appellant.

It is therefore ordered that the judgment be affirmed.