## Black Motor Co. v. Howard et al.

March 24, 1939.

James M. Gilbert, Judge.

H. L. BRYANT for appellant.

E. B. WILSON for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from a judgment of the Bell circuit court, entered in favor of the appellees, Jake and John Howard, in an action brought by the appellant to recover certain deferred installment payments alleged owing upon a truck sold to Nathaniel Bingham, which were assumed by them.

It is disclosed by the record that on October 5, 1935, the appellant, Black Motor Company, entered into a conditional sales contract with Nathaniel Bingham, whereby it sold and delivered him the Dodge truck here involved, for the agreed price of $1,102, on the deferred payment plan. $400 was at the time of its sale paid on the purchase price and the remainder of $702 was to be paid in eighteen monthly installments of $39 each. Bingham in December following the sale having defaulted in the payment of these deferred installments, plaintiff's agent and collector, S. R. Riley, called and demanded their payment, when he reported that he had transferred the truck sold him to the appellee, Jake Howard, upon the latter's agreement made with him, when taking over its possession, that he would assume and pay the deferred installments owing upon it, as by the contract provided for.

The agent testified that he thereupon contacted Jake Howard, whom he found in the possession of the truck and engaged in hauling a load of furniture with it; that upon conferring with Howard as to Bingham's transfer of it to him he explained that it was the company's truck upon which two installment payments were due by Bingham and that he would have to repossess it for the company; that Jake Howard told him that he had bought the truck from Bingham, who had transferred it to him with the understanding that he would carry out his contract of purchase therefor, and that he "wanted to pay the contract up," but didn't have the money with which to pay but one of the installments at that time.

Witness stated that he refused to accept the proffered payment of the one installment, telling Howard that if he wanted to keep the Bingham truck he would have to pay for a transfer of it to him and also pay up the installments then due, to which Howard answered that he didn't then have the money to pay for a transfer, nor more than enough to make payment of one installment, but that he could make payment of it on the 15th.

Further witness stated that while Howard didn't make this promised payment on the 15th, he brought and paid it the following Saturday to appellant at its Harlan office, when Howard was told that another payment had become due and that the company would have to repossess the truck, if he didn't bring all the payments up to date, when Howard promised him that he would pay all the amounts then due, and further said, "I have to have that truck in my business," and also that he and his brother, John Howard, were operating a transfer business for which they then particularly needed the Bingham truck.

The witness further stated that Jake failed to make this promised payment and that, due to his default, on March 7, he went to Howard's home to see him, where he found that some of his family were sick, and Jake told him he didn't have the money to bring the payments up to date and for such reason had turned the truck over to his brother, John Howard, who would keep up the payments and complete Bingham's contract.

Witness stated that he then, checking up on this report, went to see John Howard, who told him that his own truck (an International) which he had bought of appellant was then broken down and that his brother's (Jake's) Dodge truck (also bought of appellant, and similar to the one here involved sold Bingham) was also wrecked and that they needed this Bingham truck, which had been transferred them, to operate their trucking business. Further, he said that he would take over or assume Bingham's payments owing on it and pay them; also that John Howard did, pursuant to such promise, make him one installment payment of $39 thereon; but that failing to make the later payments as promised, he went to Barton's restaurant, looking for Howard, when Barton told him that Howard had gone to Richmond, Kentucky, where this Bingham truck, when

out on a trucking trip for Howard, had by his driver been wrecked the night before; that he again went to see Howard on the Saturday next following March 15, the day on which the truck was wrecked, when he asked him if he had brought the truck back from Richmond, as he had promised, and was answered that he had not, but that he had a load of freight on the truck when it was wrecked near Richmond and that he was going to get it; that he also stated he could not make the payment upon the Bingham truck at that time, on account of having to bring back this Bingham truck and the loss occasioned by its wrecking.

Witness stated further that the defendant, John Howard, then told him that he was using Nathaniel Bingham's truck in his business, when it was wrecked some four miles beyond Richmond and that his driver had there left it stored in a barn, and again promised that he would go after it and would pay the remaining installments owing thereon; that following this agreement and promise of payment given him, he again (on April 13) talked with John Howard, who then paid him a further $39 installment owing on the wrecked truck and told him that he hadn't brought the truck back because his and Jake's trucks were both wrecked and he had no truck to send after it. Also witness testified that while the truck was stored in the barn near Richmond it was so stripped and robbed of its parts and accessories that only its mere frame was left.

After these reported happenings and none of the defendants, who plaintiff claimed had promised to carry out this sales contract, having lived up to their agreement by making any further payments on the truck, this action was brought against Nathaniel Bingham, the original purchaser of the truck, and Jake and John Howard, as transferees, seeking to recover $507, the amount alleged remaining unpaid on its purchase price.

The petition alleged substantially the above facts and also that the Bingham truck after it was taken over by John Howard had been wrecked through the negligence of his driver and had been thereafter robbed by Howard of its parts. The plaintiff, waiving the tort, sued upon the contract allegedly made by Jake and John Howard with Bingham to carry out his contract with plaintiff (here appellant) for the purchase of the truck.

To the petition the defendant Howards filed answer, which was a traverse of all the allegations of the petition and completed the issues.

Upon trial before a jury plaintiff's agent, Riley, testified as to these interviews had with Bingham and Jake and John Howard, in the course of his efforts made to collect the installment payments due and owing upon the Bingham truck.

This testimony of Riley was in some measure corroborated by that of appellant's other witnesses, Barton and Shelburne, in regard to the Howards' assumption of Bingham's contract, and that John Howard had the truck in his possession and was using it in his trucking business when it was wrecked.

On the other hand, the evidence given for the defendants was wholly contradictory of that given by plaintiff's witnesses, in that, according to the contention and testimony of both Jake and John Howard, neither of them had ever taken over the possession or use of this truck, but that Bingham, upon defaulting in his payments, had turned it over to their brother-in-law, Roy Powell, who operated it in his private trucking business up to the time of his death in February, 1936, after which they contend his widow continued to conduct his trucking business, and used the Bingham truck therein, up until the time it was wrecked on March 15, by its driver, Keyes, who was then working for her.

Jake Howard denied when testifying that the truck in question was turned over by Bingham to him or that he took over its possession or assumed or promised to pay the installments at such time due and owing on it, or that, upon his becoming unable to continue making the payments, he turned it over to his brother, John. Also, John with equal emphasis denied that he ever had anything to do with or took over the possession of this Bingham truck, either from his brother Jake or from anyone, or had ever assumed or made any deferred payments owing on it, or promised to pay them or future installments to the appellant, if he were allowed by appellant to retain the possession of the truck he at the time urgently needed in his trucking business. Further, both of the Howards denied that they had ever made any payments whatever upon the Bingham truck to appellant or had assumed or promised to make any, but that their promises made to Riley, to make deferred truck

payments, related to promised payments on their own trucks, which they had each individually bought from appellant under like conditional sale contracts calling for deferred payments, and in the payment of which they were encountering considerable difficulty.

It appears that both of these defendants had bought trucks from the appellant, upon which they were owing it deferred installment payments at the time the appellant's witness, Riley, claims he was repeatedly interviewing them in regard to reclaiming the Bingham truck because of their failure to make the promised payment of these installments, past due and owing on the truck which was then in their possession. The Howards stated that the promises made by them to pay deferred installments related not to payments due and owing on the Bingham truck, but to deferred payments owing by them on their own trucks.

The defendants' witness, Keyes, the driver of the Bingham truck at the time it was wrecked, testified that he had been employed as a truck driver by both Powell, the Howards' brother-in-law, and the Howards, but that at the time he was driving the Bingham truck when wrecked, on March 15, he was the employee of, and driving it for, Roy Powell and that after his death he was employed by the defendant, John Howard, as his driver.

In this connection, ·and· contradictory of Keyes' testimony that he was driving for Powell when the truck was wrecked, it is to be noted that it was definitely established upon the trial that Roy Powell was not living at the time the Bingham truck was wrecked, as by the death certificate filed in evidence it was conclusively shown that Roy Powell had died on the previous February 8.

Upon the conclusion of this evidence the plaintiff offered an amended petition to conform with the proof thus introduced, which the court permitted to be filed.

By the amended petition, it is alleged, in conforming the pleadings with the proof given upon the trial by plaintiff's witnesses, that the truck was originally sold to Nathaniel Bingham and that shortly thereafter it was transferred by him to his co-defendants, Jake and John Howard, and possibly also to another, Roy Powell.

Further, it alleged that upon Bingham's defaulting

in his payments upon the truck, plaintiff elected and decided to enforce payment of the balance due on it, by repossessing it and subjecting it to such debt, and so notified the defendants, John and Jake Howard, who agreed that they would assume Bingham's obligation upon his truck note and contract made therefor and pay both the past due and future installments thereby called for, if plaintiff would not repossess the truck but would allow them to retain it in their trucking business, and that, upon such promise and undertaking, the defendants, Jake and John Howard, were allowed to keep the truck, conditioned upon their paying the balance owing on the truck by installments, as provided in the original Bingham contract.

According to one theory of the appellant's case, it contends that in consideration of the transfer and delivery of the truck from Bingham to the two Howards, the Howards agreed with Bingham to keep his payments up and pay the balance due on the truck, while its further theory is, as alleged by amended pleading, that after the truck got into the possession of the defendants, Jake and John Howard, they each promised the plaintiff directly that they would pay both the past due and future installments owing on the Bingham contract, in consideration of the plaintiff's foregoing its determination to enforce collection of the balance due on the truck by repossessing it. Plaintiff at the conclusion of the evidence offered six instructions, only Nos. 1, 1½ and 5 of which the court gave. Also, defendants offered four instructions, only one of which (instruction "A") the court gave.

Upon submission of the cause to the jury under this evidence and these instructions, it returned a verdict finding for the defendants, Jake and John Howard, and dismissing the petition, upon which judgment was accordingly entered.

The plaintiff, complaining of this judgment and seeking its reversal, has appealed.

It is manifest, as contended by appellant, in view of the two different grounds of recovery alleged in the pleadings, as well as supported by substantial evidence, that the appellant motor company in this trial relied upon both of these two theories, as entitling it to recover; first, that the defendants, John and Jake Howard, were obligated to it, by reason of their alleged un-

derstanding or contract made and had with Bingham, that they would carry out his obligation under his contract for the purchase of the truck in question, in consideration of its transfer and delivery to them by Bingham, for the balance due on the truck; and, second, that after the alleged transfer of the truck to the defendants, they then further directly agreed with the plaintiff to pay the balance due on the truck and carry out Bingham's purchase contract, in consideration of the plaintiff's consent then given not to at once enforce full payment of the contract amount owing, by repossessing the truck and subjecting it by immediate sale to its payment.

Appellant, so arguing, insists that both instructions Nos. 1 and 2, offered and requested given, were required in order to have reasonably and clearly submitted to the jury these two separate and distinct theories of the plaintiff's case.

Instruction No. 1 of these was given by the court, which submitted to the jury the first of these theories and is as follows:

"If you believe from the evidence that the truck referred to in the testimony was delivered or transferred to the defendants, John J. Howard and Jake Howard, or either of them, by their co-defendant, Nathaniel Bingham, under the terms and conditions by which they agreed to assume and pay the plaintiff the balance then due on said truck, you will find for the plaintiff against one or both of said defendants, John J. Howard and Jake Howard, according to the proof. Unless you so believe from the evidence you will find for one or both of the said defendants, according to the evidence."

Instruction No. 2, also offered, but which the court refused to give, is as follows:

"If the jury further believe from the evidence that after the defendants, John J. Howard and Jake Howard, came into possession of the said truck that the plaintiff, through its agent, S. R. Riley, was undertaking to repossess the said truck under plaintiff's contract with the defendant, Nathaniel Bingham, and that the defendants, John J. Howard and Jake Howard, or either of them, agreed with the plaintiff through its said agent to pay the balance

due on the said truck in order to keep the plaintiff from repossessing same from them, and that the plaintiff, through its agent, allowed the truck to remain in the possession of the said John J. Howard and Jake Howard, or either of them, because of said promise on their part, or the part of either of them, to pay the balance due on the said truck, you will find for the plaintiff against one or both of the said defendants, John J. Howard and Jake Howard, according to the proof. Unless you so believe from the evidence you will find for one or both of the said defendants according to the evidence.''

By this requested instruction, presenting plaintiff's second theory, the jury was authorized to find for plaintiff, if they believed that after the named defendants came into possession of the truck, and when plaintiff was undertaking to repossess it under its conditional sales contract with Bingham, the defendants, or either of them, agreed with the plaintiff to pay the balance due on it, and that because of such promise the plaintiff allowed the truck to remain in the possession of the defendants or either of them.

The plaintiff earnestly insists that the court seriously erred to its prejudice in refusing to give this, its offered instruction No. 2, arguing that the jury may have believed that the evidence was insufficient for them to find for plaintiff under instruction No. 1, based upon the alleged agreement made between the defendants and Bingham, but at the same time might have believed and found under the evidence, had they been so instructed as directed by instruction No. 2, that the defendants had directly promised to carry out Bingham's contract in consideration of appellant's agreeing not to reclaim and take the truck from them.

Each of these theories was supported both by pleading and evidence, and the plaintiff was entitled to request and to have had given a proper instruction presenting each theory. The rule is that each party litigant is entitled to have an instruction given, based on his theory of the case, where there is any substantial evidence to support it. Julius Winter Jr. & Co. v. Forrest, 145 Kv. 581, 140 S. W. 1005; Thoenis' Adm'x v. Andrews, 231 Ky. 160, 21 S. W. (2d) 250; Louisville & N. Railroad Company v. McCoy, 177 Ky. 415, 197 S. W. 801.

We are of the opinion that the refusal of the court to give this proffered instruction No. 2, submitting the second theory and issue in the case raised by the pleadings and evidence, was prejudicially erroneous. Taylor v. Taylor, 217 Ky. 227, 289 S. W. 305. Such being our conclusion, it follows that the judgment should be, and it is, reversed.