**H.C. HANSON, Virginia Hanson, H.C. Hanson Construction Company, Inc. and Construction Engineers, Inc., Appellants,**

v.

**AMERICAN NATIONAL BANK & TRUST COMPANY, Appellee,**

and

**AMERICAN NATIONAL BANK & TRUST COMPANY, Appellant,**

v.

**H.C. HANSON, Virginia Hanson, H.C. Hanson Construction Company, Inc., and Construction Engineers, Inc., Appellees.**

Nos. 91–SC–375–DG, 91–SC–377–DG.

Supreme Court of Kentucky.

Nov. 24, 1993.

As Modified Nov. 24, 1993.

Charles D. Greenwell, O. Grant Bruton, David J. Kellerman, Middleton & Reutlinger, Louisville, for Hansons.

Robert M. Alexander, Glasgow, for Lucille Kinslow.

John T. McGarvey, Douglas G. Sharp, Morgan & Pottinger, Louisville, Darell R. Pierce, Broderick, Thornton & Pierce, Bowling Green, for American National Bank.

John E. Spainhour, Jr., Givhan & Spainhour, Shepherdsville, for amicus curiae, Kentucky Academy of Trial Attys.

M. Thurman Senn, M. Brooks Senn, Morgan & Pottinger, Louisville, for amicus curiae, Kentucky Bankers Ass'n.

Before STEPHENS, C.J., and COMBS, LAMBERT, LEIBSON, SPAIN and WINTERSHEIMER, JJ., and PAUL L. MADDEN, Special Justice, sitting.

PAUL L. MADDEN, Special Justice.

*The Supreme Court of the United States granted certiorari of this Court's opinion in Hanson, et al., v. American National Bank, Ky., 844 S.W.2d 408 (1992). By virtue of the Writ of Certiorari and the Court's order, —— U.S. ——, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993), the judgment was vacated and the case remanded for further consideration in light of TXO Products Corp. v. Alliance Resources Corp, 509 U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). In obedience to the foregoing order, we have undertaken and thoroughly reviewed our decision herein to determine whether the requirements of TXO have been satisfied and determined that they have. Discerning no necessity for entirely redrafting our earlier opinion, we supplement and otherwise reiterate it as the Opinion of the Court herein. For clarity, the additions to our earlier opinion are shown by emphasis.*

This is a consolidated appeal which raises several issues in the context of a lender liability claim. This Court has granted discretionary review of a decision of the Court of Appeals.

At the conclusion of a lengthy trial the jury returned a verdict finding the Defendant, American National Bank (hereafter referred to as Bank), had fraudulently induced the Plaintiffs, H.C. Hanson, his wife, Virginia Hanson, H.C. Hanson Construction Company, Inc. and Hanson Engineering, Inc., (hereafter referred to as Hanson), to restructure a loan on terms that the Bank had no intention of performing. The jury awarded Hanson compensatory and punitive damages.

The following statement of the facts of this case is not intended to be complete but is necessary for an understanding of the issues presented.

H.C. Hanson is the owner of Hanson Construction Company, Inc. and Hanson Engineering, Inc. These companies are engaged in the bridge construction industry. Hanson and the companies have been customers of the Bank since the 1970's and conducted most dealings with Mr. David Chestnut, a Bank officer.

During the early 1980's, Hanson began to experience financial difficulty and the Bank continued to finance the business. By 1985 Hanson had several notes at the Bank signed by Hanson personally and in his corporate capacity for the companies.

In 1985 American National Bank was acquired by First Kentucky National Corporation. In the same year a First Kentucky task force began a review of the customer accounts at American National to reclassify any substandard accounts. To avoid public reaction to the review process, customers, including Hanson, were not informed when their accounts were being reviewed and reclassified as substandard by the task force nor was Hanson advised that a memorandum had been prepared recommending that the Hanson debts be restructured and the line of credit be restricted. That interbank memo, dated July 8, 1985, recommended that the Bank obtain a second mortgage on the Hansons' home and farm, then titled to Virginia Hanson, to secure the restructured. debts, to limit the line of credit, and to use a cut off of that credit to force Hanson to sell his personal holdings. The memo suggested that with the plan and by postponing foreclosure for several months the Bank would reduce its potential loss. This plan was refined and approved by the task force. Members of the task force met with Mr. Hanson to discuss the restructure. Hanson refused their plan. Mr. Hanson contacted Mr. Chestnut who explained the restructure plan given him. Mr. Hanson testified that Mr. Chestnut told him the Bank would finance up to 20% of new construction contracts to be rewritten annually until the jobs were completed. On July 15, 1985, Hanson drafted a letter in which he proposed a 15 year term on the restructured debt, a $125,000.00 line of credit and a $100,000.00 letter of credit secured by a second mortgage on the home and farm. The Bank informed Hanson that the entire debt must be secured by the second mortgage. Mr.

Hanson testified that Chestnut notified him that with the second mortgage securing the full restructured debt, the Bank would given Hanson a $125,000.00 line of credit, provide financing for future contracts up to 20% of the contract amount and allow 15 years for repayment of the restructured loan.

The documents were prepared by the Bank's attorney and the restructured loan was closed on July 26, 1985. The closing document contained almost 100 pages. At the closing Mr. Hanson began to read the documents. The Bank's representative protested because of the length of time it would take and Hanson was assured that the documents contained all the understandings. Relying on this assurance, Mr. Hanson did not read the documents but did sign them. Contrary to Hanson's understanding, the closing documents did not contain terms for financing as allegedly represented by Mr. Chestnut.

In the spring of 1986, Mr. Hanson obtained contracts for two bridges and obtained a $175,000.00 line of credit from the Bank for this project. This debt is evidenced by a demand note dated June 1986. In October 1986, Hanson obtained a contract to build a bridge in Powell County but no financing by the Bank was requested at that time.

In January 1987, Hanson contacted the Bank for a loan on the Powell County project and on a bridge contract in Lewis County and for a reduction in interest. The Bank denied the request for funding in these two projects, denied the interest reduction and stopped additional draws on existing lines of credit. The Bank did agree to allow for draws up to $21,000.00 to meet payroll and thereby allow time for Hanson to seek alternative financing. On March 11, 1987, the Bank demanded full payment of a 1984 note. The restructured note was called after Hanson missed the next scheduled payment.

Hanson filed the action in April 1987, alleging that the Bank's action in February and March 1987 forced Hanson Construction out of business. Hanson alleged breach of a fiduciary duty owed by the Bank, recision of the contract, and fraud and misrepresentation. The Bank counterclaimed for the debt owed it by Hanson. At the conclusion of the

evidence the trial court entered a directed verdict for the Bank on the issue of breach of a fiduciary duty and recision of the contract. The trial court submitted to the jury only the issue of fraud and misrepresentation. The jury found for Hanson and awarded compensatory damages of $1,065,000.00 and punitive damages of $5,775,000.00. The trial court entered judgment on the verdict less the amounts owed to the Bank by Hanson on the various notes, interest and legal fees. The Bank's motion for new trial and judgment NOV were heard by the trial court and denied.

The Court of Appeals affirmed the judgment of the trial court in all matters except the award of punitive damages. The Court of Appeals reversed as to punitive damages and remanded the case to the trial court for remittitur of excessive punitive damages or the grant of a new trial on punitive damages. This Court has granted discretionary review to examine the claims of errors by the parties.

The decision and order of the Court of Appeals in remanding the matter to the trial court for remittitur of the excess of punitive damages or new trial on those damages is reversed. The decision of the Court of Appeals affirming the judgment in the award of compensatory damages is affirmed.

This is a tort action for compensatory and punitive damages for fraud and misrepresentation. This Court has held in *Kentucky Electric Development Co.'s Receiver v. Head*, 252 Ky. 656, 68 S.W.2d 1 (1934), where a fraud has been perpetrated to induce a party to enter into a contract, the injured party may elect to affirm the contract and recover damages in tort for the fraud or disaffirm the contract and recover the consideration with which he has parted. *Bryant v. Troutman*, Ky., 287 S.W.2d 918 (1956).

At the conclusion of the evidence Hanson chose the remedy to pursue. Since Hanson affirmed the contract, the trial judge directed a verdict on the contract documents for the Bank in the amount of the debts evidenced by the notes, interest and legal fees. The trial court submitted to the jury only the tort claim and instructed the jury accordingly,

permitting the jury to assess damage, if any, for fraud.

■ The Bank argues that the trial court erred in not advising the jury of its directed verdicts against Hanson in the claims based on fiduciary duty and oral contract and claims for physical injury. The Bank contends that since the court did not instruct the jury of the directed verdicts, the jury was allowed to consider the evidence it heard of these claims in awarding the compensatory and punitive damages. This Court cannot accept the argument. We find no authority to support that contention nor has any been cited to us. The Civil Rules, specifically CR 50.01, do not require that special instruction to the jury, and this Court is not prepared to hold that such an instruction should be given. It is within the discretion of the trial judge to determine whether that instruction should be given to the jury.

This case was submitted to the jury on interrogatories for special verdict thereby limiting the jury in its fact finding function. A special verdict in response to written questions made in accord with CR 49.01 best prevents the jury from considering immaterial issues and submits to the jury only the appropriate contested issues. *Robinson v. Murlin Phillips & MFA Insurance Company*, Ky., 557 S.W.2d 202 (1977). *Ford Motor Company v. Fulkerson*, Ky., 812 S.W.2d 119 (1991). The jury's verdict was returned on the issues submitted: whether the Bank made fraudulent misrepresentations to Hanson and Hanson justifiably relied upon such misrepresentations to their detriment.

■ The Bank argues that the representation or promises made by the Bank to Hanson were too indefinite to form the basis for a contract and therefore are unenforceable: Where the representations are not enforceable as contracts, as a matter of law, the representations cannot be the basis for an action for fraud. The essential element in an action for fraud is not whether the representation is the consideration for contract for which a separate action may lie.

Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made

without such intention is fraudulent and actionable in deceit ... This is true whether or not the promise is enforceable as a contract. *Restatement (Second) of Torts* § 530 Comment c (1976).

The inducements presented by the Bank were specific: financing 20% of future projects, 15 year repayment of the restructured debt if paid as agreed and a $125,000.00 line of credit. It was for the jury to decide if it was reasonable for Hanson to rely upon such inducements and whether Hanson in fact did rely.

■ The Bank contends that Hanson's failure to read the contract documents must, as a matter of law, bar any claim, including one based on fraud, which alleges facts or promises contradicted by the written contracts. Where the oral representations are contrary to the written language of the contract, recision of the written contract should not be permitted by the party who failed to read it. However, that party may yet have a cause of action based on fraud and deceit against the person who induced him to sign the contract. *Cline v. Allis–Chalmers Corporation*, Ky., 690 S.W.2d 764 (1985).

■ Where there is evidence that a party to a contract is induced to signing the contract without reading it, it is a question for the jury to determine whether that party exercised ordinary care under the circumstances in doing so. *Kreate v. Miller*, 226 Ky. 444, 11 S.W.2d 99 (1928).

■ If the jury determines that the party signing the contract without reading it exercised ordinary care and that the person who induced the party did so through fraud and misrepresentation, a tort action for fraud is the appropriate remedy.

■ Hanson presented evidence that he did not have an opportunity to read the contract, that he was discouraged from doing so, that the Bank had the documents several days before the closing and had not made these available to him for review, that he was discouraged from obtaining separate counsel to examine the documents and of the manner in which the Bank presented itself to obtain his confidence, all coupled with the assur-

ances that the documents were prepared as he and the Bank had agreed. In light of this evidence, it was properly left for the jury to determine whether Hanson exercised ordinary care or whether Hanson's failure to do so was so imprudent as to bar recovery for deceit.

■ The Bank argues that the loan documents must be enforced as written and any evidence to the contrary must be excluded under the parol evidence rule. It concludes that under this well-established rule that even though the evidence of the oral promise may prove fraud, all such evidence is inadmissible since it is at variance with the written document. The Bank would extend the parol evidence rule to include tort actions based on fraud and deceit. We do not accept its arguments. The rule announced in *Bryant v. Troutman*, Ky., 287 S.W.2d 918, 920 (1956), is accurately stated.

> The rule is that parol testimony is not admissible to vary the terms of a writing. When the negotiations are completed by the execution of the contract, the transaction, so far as it rests on the contract, is merged in the writing. But false and fraudulent representations made by one of the parties to induce the other to enter into the contract, are not merged in the contract. Parol evidence is admissible to show that the making of the contract was procured by fraudulent representations. This does not vary the terms of the contract.

■■ The Bank claims that Hanson's action is based on an oral promise by the Bank to finance future projects and to renew the restructured note after three years to be paid over a period of 15 years; since that agreement could not have been performed within one year, any action on that oral agreement is barred by KRS 371.010. The Court of Appeals accurately defined the rule in this state that our statutes do not abrogate the common law remedy for fraud merely because the fraudulent misrepresentation is not in writing. The rule has been unchanged since announced by this Court in *Vertrees v. Head & Matthews*, 138 Ky. 83, 127 S.W. 523, 524, 525 (1910).

That part of the statute of frauds invoked to defeat a recovery has no application to the state of facts set out in the petition. If a person, in violation of law, or deceitfully or fraudulently, or with knowledge of its falsity, makes a representation or assurance concerning the character or credit of another, it is not essential to maintain a cause of action against him that such representation or assurance shall be in writing. The statute does not embrace assurances or representations that are deceitfully or fraudulently made, or that are made with knowledge of their falsity, or in violation of a statute. It was not intended to save harmless from consequences of false and fraudulent statements of wrongdoers, or those who for purposes of gain or other motive would cheat or mislead. It was designed to protect persons who honestly and in good faith made assurances respecting the credit or standing of another, and should be confined to this character of cases.

■ The Bank claims that inasmuch as Hanson continued to make draws on the line of credit to meet the payroll and made payments on the debt after February 5, 1987, the date on which Hanson was informed that the Bank would not grant his request for added funding and would not honor the commitment in future financing, Hanson waived any action for fraud and thereby condoned the fraud, as a result of which, there is no viable claim of fraud to submit to the jury.

The Court of Appeals rejected the Bank's contention in holding the maintenance of an action in tort for fraud is based on the acceptance of the contract and the claim is not barred by mere acts of affirmance. In *Sanford Construction Company v. S & H Contractors, Inc.*, Ky., 443 S.W.2d 227 (1969), this Court held that a defrauded party who has substantially performed his contract before discovery of the fraud may go on with the performance and also recover damages. Where the terms of the contract were not wholly executory at the time the fraud was discovered, but had been performed, the claim for fraud and misrepresentation was the appropriate avenue.

The Bank suggests that Hanson's evidence of loss for the destruction of Hanson's construction business was too speculative and that, as a matter of law, the proof of damages does not meet the standard of reasonable certainty announced in *Pauline's Chicken Villa, Inc. v. KFC Corporation*, Ky., 701 S.W.2d 399 (1986). The basis for its assertion is that Hanson's expert witness, called to prove damages, rejected consideration of Hanson's history and thereby ignored the best available evidence. In *Pauline's Chicken Villa* this Court held that it cannot elucidate a single definition of "reasonable certainty."

In *Kellerman v. Dedman*, Ky., 411 S.W.2d 315 (1967), this Court quoted from the Wisconsin decision in *Essock v. Mawhinney*, 3 Wis.2d 258, 270, 88 N.W.2d 659, 664 (1958).

[I]t is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances all that can be required is that the evidence with such certainty as the nature of the particular case may permit lay a foundation which will enable the trier of facts to make a fair and reasonable estimate and the plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss.

In the case before us, the witness did establish his qualifications and the fact that the methods used by him are recognized methods for valuing companies. His methods did consider past performances of this company and its improving future of increasing work, its backlog, anticipated growth and other factors.

We conclude there was adequate competent evidence presented during the trial of the case to support submitting the instruction to the jury on the issue of compensatory damages.

The next claim of error is the charge by the Bank that the trial court erred in giving a jury instruction that it was the duty of the Bank to act in good faith. The Bank insists that since the notes signed by Hanson were demand notes, already due and subject to being called at any time without reason, it was improper for the trial judge to impose upon the Bank the added duty to act in good faith, a duty not imposed in the contract documents. We do not reach the issue of whether a duty of good faith is owed in calling a demand note. Under the instruction to the jury, the award of damages could only be made on a finding of fraudulent misrepresentation. The jury's finding of fraud alone supports the award. The instruction on fraudulent misrepresentation given by the court to the jury clearly and accurately defines the essential elements that Hanson must prove and the jury must find to establish a claim for fraudulent misrepresentation. The addition of the good faith instruction added nothing and, even if it were erroneously given, it is a harmless error.

This Court cannot accept the Bank's contention that since banking is an industry subject to strict federal and state regulations that openly discourage, if not prohibit, it from making loan commitments and promises similar to those the jury determined were made in this case, that as a matter of public policy the banking industry should not be held liable when it attempts to cut its losses by discontinuing and cutting off the credit of customers it believes are a poor business risk.

The idea that any person or industry or enterprise would be immune from liability for fraud and deceit is not acceptable. *Bryant v. Troutman*, Ky., 287 S.W.2d 918 (1956).

The law should not, and does not permit a covenant of immunity to be drawn that will protect a person against his own fraud. Such is not enforceable because of public policy. Language is not strong enough to write such a contract. Fraud destroys all consent. It is the purpose of the law to

shield only those whose armor embraces good faith.

■■■ The Bank argues that Hanson established no basis for the award of punitive damages. In light of what has been said earlier in the opinion, we cannot accept such an argument. We have found that there is sufficient evidence and therefore reasonable grounds for submitting to the jury the issue of fraud and misrepresentation. Once the jury had found that the Bank intentionally misrepresented and deceived Hanson, an instruction on punitive damages should have been given and the jury afforded the opportunity to assess such sums as it considered appropriate. The trial court submitted instructions applying the factors set out in KRS 411.186. The constitutionality of this statute is not in issue in this case.

■■■ The case reaches this Court on the issue of the instructions by the trial court to the jury on punitive damages and on the issue of remittitur. The Court of Appeals found that since the jury's award of compensatory damages was substantial, it would by itself be a deterrent of future deceptive practices and that in comparing the punitive damages assessed by the jury with the fraud that caused it, when taking into consideration the relevant statutory factors, the jury's award of punitive damages was disproportionate.

The court concluded that the award of punitive damages was the result of a failure in the instructions to identify a measure for fixing the amount of such damages. The court concluded that to the extent the award of punitive damages exceeded three times the compensatory damages, it was excessive and the excess should be remitted or a new trial ordered. This Court is unaware of any authority in this jurisdiction for court-ordered remittitur of punitive damages or for the fixing of the amount of such damages, and it will not here establish such precedent.

In *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court reaffirmed its earlier ruling that an award of punitive damages does not violate the due process clause of the Constitution. That Court did not identify the parameters the trial court and appellate court should apply in insuring that an award of punitive damages meets the test of due process. The Court held that instructions to the jury must define the purpose of punitive damages as punishment to the wrongdoer and as a deterrent to wrongdoers and others from such activities in the future and that post-trial procedures be in place and utilized by the trial court to scrutinize the award of such damages. The instructions here were adequate under *Haslip*.

The trial court instructed the jury in accordance with the provisions of KRS 411.184 and 411.186. The judge set forth in detail the definitions and standards the jury was to use in its deliberation in deciding whether punitive damages should be awarded and, if so, in what amount.

■■■ Such instructions are the only guidance that may be given the jury. Reasonable men and women will differ in determining the amount of exemplary damages, but so long as the jury's decision is based on competent evidence, is free of passion or prejudice, and is appropriately reviewed by the trial judge, we find no basis for substituting this Court's opinion in the place of the jury's.

In the present case, the jury was given an instruction that met the standards in *Haslip* and the post-trial review by the trial court of the punitive damages award conformed to the *Haslip* test. We find no basis in the Bank's argument.

*Neither does the punitive damage award herein transgress the requirements of TXO Production Corp v. Alliance Resources Corp., 509 U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), which largely reaffirmed the viability of Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1992). While the Court acknowledged its inability to formulate a bright line rule between that which is constitutionally acceptable and unacceptable, it recognized that the concept of reasonableness must enter into the constitutional analysis of a punitive damage award. Affirming the Supreme Court of West Virginia, the Court noted that the punitive damage award in TXO was not so "grossly excessive" as to*

violate due process, this despite the fact that punitive damages exceeded compensatory damages 526 times. In addition to reasonableness, the Court held it appropriate to consider the amount of money potentially at stake, the bad faith of the party against whom judgment was rendered, whether a scheme was employed which was part of a larger pattern of trickery, fraud and deceit, and the wealth of the offending party.

When the concept of reasonableness and the other factors identified hereinabove are considered in light of the evidence presented, evidence from which the jury believed the Bank engaged in an elaborate fraud to gain additional security for existing loans with no intention of performing its representations of fact and with knowledge of the likely destruction of Hanson's business, we have no doubt as to the constitutionality of the punitive judgment. TXO recognized that

> Such awards are the product of numerous, and sometimes intangible, factors; a jury imposing a punitive damages award must make a qualitative assessment based on a host of facts and circumstances unique to the particular case before it.

Id., 509 U.S. at ——, 113 S.Ct. at 2720, 125 L.Ed.2d at 379.

When the foregoing standards are applied here, there is nothing "so 'grossly excessive' as to violate the substantive component of the Due Process Clause."

This Court is mindful that Congress has enacted statutes that establish the amount of exemplary damages by permitting treble damages in certain cases. These caps are specified for certain statutory actions, not constitutionally protected actions. This Court is not inclined to enact law on the measure of punitive damages. Such is a matter for the legislature, provided it can be done consistent with our Constitution.

It is with equal caution that this Court does not substitute its opinion as to the amount of exemplary damages for that of the jury. It was the trial jury and trial judge who heard all the evidence and had the opportunity to see and hear the witnesses during the lengthy trial. The sanctity of the jury verdict is at the heart of our judicial system.

The procedures for review of the jury verdict are stated in CR 59.01. To assist the trial court in applying the test of determining whether a verdict is given under the influence of passion and prejudice, the "first blush rule" as adopted. Davis v. Graviss, Ky., 672 S.W.2d 928 (1984).

The Court of Appeals concluded, as does this Court, that in the award of punitive damages there is no basis on which to find the award was the product of passion or prejudice. But unlike the Court of Appeals, this Court does not agree that the verdict of punitive damages is the result of a failure in submitting to the jury an instruction on a precise measure to be used in establishing the amount of such damages.

 The Bank contends that by allowing evidence of the acquisition of American National Bank by First Kentucky National, Hanson was permitted to focus on the acquisition and thereby influence the jury in the award of compensatory and punitive damages. We cannot accept this assertion. We would agree with the Bank if the evidence of the takeover served no purpose other than to inflame and prejudice the jury against outsiders. But here it was established that the takeover of American National Bank by First Kentucky was common knowledge and had been extensively advertised by both banks since 1985. More importantly, the evidence of the takeover is relevant and material in Hanson's proof of the acquisition, Hanson's claim of fraud would appear more a paranoid reaction than a meritorious claim. We see no reason to reject the standard of relevance announced in Ford Motor Company v. Fulkerson, Ky., 812 S.W.2d 119 (1991), that it is within the discretion of the trial judge whether the probative value of the evidence outweighs its inflammatory nature. There is nothing inflammatory in the evidence of the acquisition of American National Bank by First Kentucky that would unduly prejudice the jury against the Bank.

The decision and order of the Court of Appeals in remanding the matter to the trial court for remittitur of the punitive damages award or a new trial on those damages is

reversed. The decision of the Court of Appeals affirming the judgment in the award of compensatory damages is affirmed. *The final judgment of the Warren Circuit Court is fully reinstated.*

*All concur.*