Terry A. YOUNG and Lynn
Y. Young, Appellants,

v.

VISTA HOMES, INC.; Re/Max Execu-
tive Group, Inc.; James E. Bramblett;
and Fred Bramblett, Appellees.

and

Vista Homes, Inc., Cross–Appellant,

v.

Terry A. Young and Lynn Y.
Young, Cross–Appellees.

and

Vista Homes, Inc., Appellant,

v.

Bernard Prevost, Jr.; Danielle Prevost;
Randall H. Roller; Laura A. Roller;
Dean Moreland; Katy Moreland; Wil-
lard Suther; Michaela Suther; and C.
Mike Moulton, Appellees.

and

Bernard Prevost, Jr.; Danielle Prevost;
Randall H. Roller; Laura A. Roller;
Dean Moreland; Katy Moreland; Wil-
lard Suther; and Michaela Suther,
Cross–Appellants,

v.

Vista Homes, Inc.; Re/Max Executive
Group, Inc.; James E. Bramblett; and
Fred Bramblett, Cross–Appellees.

Nos. 2004–CA–001618–MR, 2004–CA–
001726–MR, 2005–CA–001256–MR,
2005–CA–001412–MR.

Court of Appeals of Kentucky.

Jan. 12, 2007.

Discretionary Review Denied by
Supreme Court Feb. 13, 2008.

C. Mike Moulton, Moulton & Long, PLLC, Elizabethtown, KY, for appellants/cross-appellees, Terry and Lynn Young.

Dwight Preston, Lewis and Preston, Elizabethtown, KY, for appellees/cross-appellees, James Bramblett and Fred Bramblett.

Allan Weiss, Ferreri & Fogle, Louisville, KY, for appellee/cross-appellant, Vista Homes, Inc.

Reford H. Coleman, Robert D. Johnston, R. Keith Bond, Coleman Lochmiller & Bond, Elizabethtown, KY, for appellee/cross-appellee, Re/Max Executive Group, Inc.

Before HENRY [1] and WINE, Judges; BUCKINGHAM,[2] Senior Judge.

## OPINION

WINE, Judge.

These are consolidated appeals and cross-appeals from separate judgments of the Hardin Circuit Court confirming jury verdicts in two related trials. In all of these cases, the homeowners entered into contracts for the construction and purchase of purported four bedroom homes. However, the septic systems for these houses only met the building code standards for three bedroom homes. For the most part, we find no reversible error on any of the issues raised in these appeals and cross-appeals. However, we conclude that the homeowners failed to present evidence of intentional fraud warranting the awards of punitive damages. Furthermore, we find that the trial court's award of attorney fees after the second trial failed to fully compensate those homeowners for the attorney fees and costs to which they are entitled by statute. Hence,

1. Judge Michael L. Henry concurred in this opinion prior to the expiration of his term of office on December 31, 2006. Release of the opinion was delayed by administrative handling.

2. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

we affirm in part, reverse in part, and remand for entry of a new judgment.

## FACTS

James Bramblett is the president, and sole officer and stockholder of Re/Max Executive Group, Inc. (Re/Max), a real estate brokerage company located in Elizabethtown, Hardin County, Kentucky. James Bramblett is also a stockholder and president of Vista Homes, Inc., also located in Elizabethtown, Kentucky. James's father, Fred Bramblett, is the other stockholder and vice-president of Vista Homes. Vista Homes is engaged in the construction and sale of homes. Among its other endeavors, Vista Homes is the developer and primary builder in the LaVista subdivision, which is located near Rineyville in Hardin County.

Terry and Lynn Young (the Youngs), Bernard and Danielle Prevost (the Prevosts), Randall and Laura Roller (the Rollers), Willard and Michaela Suther (the Suthers), and Dean and Katy Moreland (the Morelands) each contracted with Vista Homes for the construction and purchase of homes in the LaVista subdivision. All of the homes are based on the same design. They also signed contracts with Re/Max to serve as listing agent for the transactions. All of these buyers allege that Vista Homes and Re/Max represented the homes as having four bedrooms. Vista Homes characterizes the homes as having three bedrooms with a "bonus" room. The distinction is significant because Vista Homes obtained permits for and built septic systems on the properties that are approved and suitable for three bedroom homes.

After the Youngs began having problems with their septic system, Vista Homes and the Hardin County Board of Health reached an agreement regarding the septic systems. Vista Homes agreed to install a new system appropriate for a four bedroom house. Vista Homes also contacted the other homeowners and extended the same offer. The Youngs accepted the offer but claim the new system installed by Vista Homes does not comply with applicable building codes. The other homeowners declined to have Vista Homes replace their septic systems.

Thereafter, the Youngs, the Prevosts, the Rollers, the Suthers, and the Morelands each brought separate complaints against Vista Homes, James and Fred Bramblett, and Re/Max. All of the complaints asserted claims for misrepresentation, and a private action for a code violation pursuant to KRS 198B.130. The Youngs, the Prevosts, the Rollers, and the Morelands asserted claims for negligent construction, and the Youngs and the Morelands asserted claims for breach of warranty. Finally, the Youngs also sought damages for loss of use of their property, discomfort, and annoyance.

Because the cases involved similar issues and the same defendants, the trial court ordered that they be consolidated for motion and discovery practice. However, the Youngs' case was tried first and separately. Prior to the trial in the Youngs' case, the trial court granted partial summary judgment on the Youngs' statutory claim for damages related to the replaced septic system. The trial court concluded the Youngs were precluded from recovering such damages because Vista Homes had repaired and brought the system into compliance with applicable zoning regulations and because the Youngs had not identified any witnesses who would testify regarding any additional repair costs or diminution of the value of their property.

The Youngs' remaining claims proceeded to a jury trial in June 2004. At the close of the Youngs' proof, the trial court entered directed verdicts dismissing the claims against Re/Max, James Bramblett, and Fred Bramblett. The court also

granted a directed verdict on the Youngs' negligence claim against Vista Homes, but allowed the remaining claims to proceed to trial. After the close of all proof, the jury returned a verdict in favor of the Youngs on all counts, awarding $3,000.00 in nominal damages on the misrepresentation claim, $3,900.00 in punitive damages, and $600.00 for breach of warranty.

In post-verdict orders, the trial court reduced the nominal damages award to $1.00, concluding the jury did not comply with the court's instruction to award a "trivial" sum in compensatory damages. Accordingly, the trial court entered a judgment in favor of the Youngs totaling $4,501.00. The court also denied the Youngs' motion for attorney fees. The court recognized that KRS 198B.130(1) allows an award of attorney fees in an action for damages arising out of a building code violation, but the court declined to make such an award because the Youngs had failed to prove actual damages arising from the statutory violation.

The claims by the other homeowners proceeded to a jury trial in February and March of 2005. As in the Youngs' case, the trial court granted a directed verdict and dismissed the claims against Re/Max, James Bramblett, and Fred Bramblett. The court also sustained Vista Homes' motion for a directed verdict on the negligence claims, but submitted the remaining claims to the jury. After deliberating, the jury returned awards for each of the homeowners in the following amounts:

| | Misrepresentation | Code Violation | Warranty | Punitive Damages |
|---|---|---|---|---|
| Prevost | $1,000.00 | $3,700.00 | $2,050.00 | $8,000.00 |
| Roller | $1,000.00 | $3,700.00 | $8,000.00 | $8,000.00 |
| Suther | $1,000.00 | $3,400.00 | $1,750.00 | $8,000.00 |
| Moreland | $1,000.00 | $4,200.00 | $1,700.00 | $8,000.00 |

In its post-trial order, the trial court reduced the awards for misrepresentation to $1.00, finding the homeowners had failed to present evidence of a diminution in the fair market value of the properties and that they had been awarded the cost of repair separately under the other claims. The trial court also found that the punitive damages awards were not excessive. Finally, the trial court granted the homeowners' motions for attorney fees for the code violation. However, the court only required Vista Homes to pay a percentage of the award recovered by the landowners for the building code violation. Accordingly, the court ordered Vista Homes to pay $740.00 in attorney fees to the Prevosts, $740.00 to the Rollers, $680.00 to the Suthers, and $840.00 to the Morelands.

After entry of the respective judgments, these appeals and cross-appeals followed. Considering the related facts and common issues presented, this Court ordered the appeals consolidated. But while each judgment is based upon separate facts, we recognize that the legal and factual issues are overlapping. Consequently, we will address the questions presented in these appeals by issue and then specifically apply our analysis to the facts of each case.

**CONSOLIDATION OF CASES FOR SECOND TRIAL**

■ Prior to the Youngs' trial, the parties agreed to consolidate these actions for purposes of discovery. The parties also agreed that the Youngs' claims should proceed to trial first, as it was the senior action and involved unique facts. After the Youngs' trial, Vista Homes moved for separate trials in the remaining cases.

The trial court denied the motion, finding that a single trial was warranted based upon the common issues and for purposes of judicial economy. Such procedural decisions fall clearly within the trial court's discretion under CR 42.01, which permits consolidation of actions having common questions of law and fact. *V.S. v. Commonwealth, Cabinet for Human Resources,* 706 S.W.2d 420, 425 (Ky.App. 1986). Although each homeowner's claims arose from separate contracts, we agree with the trial court that all of their claims involved common questions of law and fact. Furthermore, separate trials would have involved repeated litigation involving the same facts and evidence. We conclude that the trial court properly exercised its discretion in consolidating these actions. *Massie v. Salmon,* 277 S.W.2d 49, 51 (Ky. 1955).

## AMENDMENT OF COMPLAINT AT CLOSE OF SECOND TRIAL

 Vista Homes also notes that the Prevosts, the Rollers, and the Suthers did not plead breach of warranty claims in their complaints, but the trial court instructed the jury to consider warranty claims for each of those homeowners. Vista Homes contends that it was unfairly prejudiced by the amendment of their complaints at the close of proof. However, a trial court has broad discretion to amend the pleadings to conform to the evidence presented at trial. CR 15.02. Where an issue has been tried by express or implied consent, the trial court's discretion to allow amendment will not be reversed except on a showing of clear abuse. *Nucor Corp. v. General Electric Co.,* 812 S.W.2d 136, 145 (Ky.1991).

Vista Homes does not state how it was unfairly prejudiced by the trial court allowing the Prevosts, the Rollers, and the Suthers to amend their complaints at the close of proof. It does not identify any evidence or defense which it was unable to present at trial prior to the amendment being formally granted. Consequently, we cannot find the trial court abused its discretion by allowing the Prevosts, the Rollers, and the Suthers to assert claims for breach of warranty.

## NEGLIGENCE

The homeowners argue the trial court improperly dismissed their negligence claims against Vista Homes. They assert they properly stated claims for negligence *per se* based upon Vista Homes' breach of its statutory duty. The trial court found that the negligent construction claims were duplicative of the warranty claims. While we disagree with the trial court's reasoning, we conclude that the homeowners have failed to show any prejudice from the trial court's ruling.

 It is well established that each party litigant is entitled to have an instruction given based on his theory of the case where there is any substantial evidence to support it. *Black Motor Co. v. Howard,* 277 Ky. 638, 126 S.W.2d 1092, 1096 (Ky. 1939). A statutory claim under KRS 198B.130 is distinguishable from a negligence *per se* action. *Real Estate Marketing, Inc. v. Franz,* 885 S.W.2d 921, 927 (Ky.1994). And of course, a warranty claim sounds in contract, not in tort. Although these claims overlapped considerably, the homeowners presented sufficient evidence to warrant an instruction under each theory.

Nevertheless, we find no reversible error. In each case, the homeowners recovered damages based upon the code violations and for breach of warranty. The homeowners do not identify any different damages to which they would have been entitled under a negligence instruction. Hence, the trial court's entry of directed

verdicts on their negligence claims was harmless error.

## DISMISSAL OF NEGLIGENCE CLAIM BASED ON REPAIRED SYSTEM

The Youngs argue the trial court erred in dismissing its separate claim against Vista Homes seeking additional damages related to the current septic system installed on their property. As noted above, Vista Homes replaced the septic system on the Youngs' property with one suitable for a four bedroom home. The Youngs contend that the existing system still does not comply with applicable building codes. They further allege that they are entitled to damages for loss of use of their property, discomfort, and annoyance.

The trial court found as a matter of law that the repaired system did not violate any building codes. In support of this conclusion, the trial court noted the local government officials charged with enforcement of the code testified that the repaired system is a permissible variance under the code. The Youngs' expert testified that the repaired system is still in violation of the code, but conceded it could be permissible under a variance.

■ We disagree with the trial court that this evidence would absolutely preclude the Youngs' claim of negligence in installing the repaired septic system. By definition, a variance is a departure from the terms of an applicable regulation or ordinance. *See, e.g.,* KRS 100.111(24), defining a variance from zoning regulations. *See also* BLACK'S LAW DICTIONARY 1551 (7th ed.1999). The code enforcement official's discretionary decision not to enforce a violation does not automatically amount to a variance. (It may, however, estop those officials from subsequently enforcing a code violation.) The code enforcement officials conceded Vista Homes never sought a variance or waiver from the building codes. In the absence of evidence that the

enforcement officials approved the repaired system as a variance from the applicable building codes, we conclude the trial court erred in concluding that the Youngs' claim was precluded as a matter of law.

■ Nevertheless, we also conclude that the trial court properly dismissed this claim. As the trial court noted, the Youngs presented no evidence they will be required to replace the septic system. Furthermore, they presented no evidence of what it would cost to repair the system again or that their property value was diminished as a result of the non-complying septic system. And finally, the trial court correctly concluded that the Youngs are not entitled to non-economic damages for annoyance, discomfort, and loss of use. *Franz,* 885 S.W.2d at 927. Thus, the trial court properly found that they failed to prove damages even if their current septic system does not comply with applicable zoning regulations.

## CODE VIOLATION

■ On the other hand, the trial court properly submitted the code violation issue to the jury. KRS 198B.130(1) permits any person damaged as a result of a violation of the building code to bring a private action for damages against the person who committed the violation. There was no dispute that the septic systems did not meet the building code requirements for a four bedroom house. The only issue was whether the houses which Vista Homes built were subject to those requirements. As discussed below, we find that the jury could reasonably find that the health department would have required larger septic systems had Vista Homes told the officials the houses had four bedrooms. Therefore, the jury's conclusions in this regard are supported by substantial evi-

dence and will not be disturbed on appeal. CR 52.01.

## MISREPRESENTATION

The central issue in this case concerns the homeowners' claims against Vista Homes for fraudulent misrepresentation. In their separate appeals, all of the homeowners argue that the trial court improperly dismissed their misrepresentation claims against Re/Max, and James and Fred Bramblett. The homeowners also argue the trial court erred by reducing their compensatory damage awards to a nominal $1.00. In its cross-appeal against the Youngs, Vista Homes attacks the jury's award of punitive damages by arguing that there was no evidence that it acted with fraud, oppression, or malice. With respect to the other homeowners, Vista Homes primarily challenges both the instructions and the trial court's denial of its motions for directed verdicts. Since these latter arguments go to the heart of the homeowners' misrepresentations claims, we will first address Vista Homes' cross-appeals.

■ In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation, b) which is false, c) known to be false or made recklessly, d) made with inducement to be acted upon, e) acted in reliance thereon and, f) causing injury. *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999), *citing Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky.App.1978). The homeowners allege that Vista Homes consistently represented the houses as having four bedrooms. They refer to statements by James and Fred Bramblett, as well as printed materials provided by both Re/Max and Vista Homes, which stated that the homeowners were purchasing four

bedroom homes. However, in the applications to the health department for approval of the septic systems, Vista Homes characterized the houses as having three bedrooms. The homeowners assert that these inconsistent statements amount to a knowing misrepresentation about the number of rooms in each house.

For its part, Vista Homes denies it ever represented the houses as having four bedrooms. Rather, Vista Homes asserts it represented the houses as having three bedrooms plus a "bonus" room which the buyers could use as they wished. Vista Homes further contends it was entitled to rely on the health department's determination that the septic systems were appropriate for the houses as designed. While Vista Homes concedes that there is a legal dispute regarding the adequacy of the septic systems, Vista Homes argues its conduct cannot amount to an intentional misrepresentation of material facts.

In the Youngs' case, the trial court framed the issue as whether Vista Homes "knew or should have known, that the property being sold was not constructed with a septic system suitable for a four bedroom home, but withheld that information from the [Youngs]." The instruction given at the second trial was worded slightly different. The trial court first asked the jury to determine whether each homeowner purchased a four bedroom home. The court then separately instructed the jury to determine, among other things, whether,

Vista Homes, Inc., by and through its officers[,] employees[,] or agents, including but not limited to Fred Bramblett and James Bramblett, knew or should have known, that the property being sold was not or would not be constructed with a septic system suitable for a four bedroom home, but made a statement to the Plaintiffs that what was being pur-

chased was a four bedroom home or withheld information regarding the septic system from the Plaintiffs.

Vista Homes does not appeal from the misrepresentation instruction given in the Youngs' case. However, Vista Homes does argue the trial court erred at the second trial by finding the actual number of bedrooms in each house was a factual issue for the jury. Vista Homes contends that such an inquiry requires the jury to engage in an entirely subjective determination of what constitutes a bedroom. And since the sufficiency of the septic system is based upon the number of bedrooms, Vista Homes further argues the trial court's instruction actually requires the jury to make a legal finding concerning the definition of the term "bedroom" under the Kentucky Building Code.

■ Although Vista Homes poses an interesting question, we find that it has not adequately preserved this issue for review. At the second trial, Vista Homes did not object to the wording of the interrogatory, but argued it should include a definition of the term "bedroom." On appeal, Vista Homes now argues that the interrogatory was improper because it called for a legal conclusion.

■ Because Vista Homes failed to raise a specific and contemporaneous objection to the wording of the interrogatory, its current ground for appeal is not preserved for review. *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66, 73 (Ky.2000). Furthermore, Vista Homes did not raise its current objection to the interrogatory until its post-trial motions for a judgment notwithstanding the verdict or a new trial. An objection to a jury instruction raised for the first time in a motion for a new trial is not timely and will not be consid-

ered by this Court. *Burgess v. Taylor*, 44 S.W.3d 806, 814 (Ky.App.2001).

■ Vista Homes also asserts it reasonably relied on the health department official's approval of the septic system applications. Consequently, it argues that its statements or omissions to the homeowners cannot amount to a misrepresentation. Vista Homes also contends the trial court erred by denying its directed verdict motions on the misrepresentation claims brought by the Prevosts, the Rollers, and the Suthers. Specifically, Vista Homes argues there was no evidence that these homeowners relied on any representations that they were purchasing a four bedroom home.

But at both trials, the health department officials testified their approval of the septic systems was based solely on Vista Homes' representation in the applications that the homes had three bedrooms. As the trial court recognized in the Youngs' case, it is immaterial whether the fourth room was designated as a bedroom or a "bonus" room because Vista Homes represented that it could be used as a bedroom. But at the same time, Vista Homes applied for and installed a septic system approved for a three bedroom home. Thus, the misrepresentation in these cases does not directly involve the number of bedrooms in the houses, but the concealment of facts about the adequacy of the septic systems.

The contracts between Vista Homes and the various buyers did not set out the number of rooms in each house. And while the plan specifications referred to the additional room as a "bonus" room, Vista Homes' promotional literature consistently referred to the houses as having four bedrooms. Vista Homes also provided the information for the multiple listing sheets, which characterized the properties

as four bedroom homes.[3] Furthermore, Vista Homes built closets in the bonus room, indicative of plans to use it as a bedroom. The testimony by each homeowner established that they relied upon Vista Homes' representations that the additional room could be used as a bedroom. There was also testimony the health department would have required larger septic systems had Vista Homes indicated on the applications the houses had four bedrooms.

■ The concealment by a seller of a material defect in property being sold, or the suppression by him of the true condition respecting the property, so as to withhold from the buyer information he is entitled to, violates good faith, and constitutes a deception. *Hall v. Carter,* 324 S.W.2d 410, 412 (Ky.1959). We conclude Vista Homes' representations concerning the number of bedrooms imposed upon it a duty to disclose material facts concerning the adequacy of the septic system. Under the circumstances, the jury could reasonably find the statements by Vista Homes' agents induced the buyers to believe that the houses which they were purchasing met the building code requirements for four bedroom homes. Therefore, the trial court properly submitted the misrepresentation issue to the jury.

**DISMISSAL OF CLAIMS AGAINST JAMES AND FRED BRAMBLETT**

In their respective appeals, the homeowners argue the trial court erred in dismissing their claims against Re/Max, James Bramblett and Fred Bramblett. In particular, they argue the trial court erred in concluding that James and Fred Bram-

blett could not be personally liable for actions taken within the scope of their agency for the respective corporations. They also contend that the Brambletts' acts and misrepresentations may be imputed to Re/Max as well as Vista Homes, and therefore the trial court erred by dismissing their claims against Re/Max.

■ With respect to the Brambletts, we are inclined to agree. Generally, an agent is not liable for his own authorized acts, or for the subsequent dealings between the third person and the principal after the principal is disclosed. *Potter v. Chaney,* 290 S.W.2d 44, 46 (Ky.1956). Likewise, an officer, director, or shareholder, when acting as an agent of the corporation, is also protected from personal liability when acting within his authority to bind the principal. *Smith v. Isaacs,* 777 S.W.2d 912, 913 (Ky.1989), citing RESTATEMENT (SECOND) OF AGENCY § 328 (1958). While an agent or corporate officer is normally not liable for the debts or contractual obligations of the principal, an agent or corporate officer is not immune from liability for his own intentional misconduct or for negligence based upon a breach of his own duty. *Isaacs,* 777 S.W.2d at 913; *Peters v. Frey,* 429 S.W.2d 847, 849 (Ky.1968). *See also Cohen v. Alliant Enterprises, Inc.,* 60 S.W.3d 536, 539 (Ky.2001); *Carr v. Barnett,* 580 S.W.2d 237 (Ky.App.1979); and RESTATEMENT (SECOND) OF AGENCY §§ 213, 328, 343, and 350–58.

■ In these cases, neither James nor Fred Bramblett can be personally liable for the contractual warranty claim. And while the code violation claim and negligence claim sound in tort, they are based

---

3. Even if none of the homeowners actually viewed the literature or the multiple listing sheets, they were probative to show Vista Homes' representations about the number of bedrooms in this model of house. For this

reason, we conclude that the multiple listing sheets were relevant to the issues presented in this case, and therefore the trial court properly allowed their introduction into evidence.

on contractual and statutory duties owed by Vista Homes, not by James or Fred Bramblett individually. This leaves only the misrepresentation claim, which is, by definition, an intentional tort. *Hanson v. American National Bank & Trust Co.*, 865 S.W.2d 302, 306 (Ky.1993).

■ It would seem that James and Fred Bramblett could be individually liable for any misrepresentations which they personally made even though they were acting on behalf of Vista Homes at the time. This question is moot, however, given that the homeowners recovered only nominal damages on their misrepresentation claims and our conclusion below that they were not entitled to punitive damages. We will not reverse a judgment simply to enable a party to recover nominal damages. *Poole v. Young*, 459 S.W.2d 162, 163 (Ky.1970); *Hayes v. Hayes*, 357 S.W.2d 863 (Ky.1962). Furthermore, the homeowners have adequate recourse against Vista Homes to collect the judgments.

## DIRECTED VERDICT AGAINST RE/MAX

■ We also conclude that the trial court properly granted a directed verdict dismissing the claims against Re/Max. For his part, Fred Bramblett was never an agent or officer of Re/Max, nor did Re/Max ever hold him out as such. Therefore, his knowledge and conduct could not be imputed to Re/Max.

■ The situation with James Bramblett is somewhat more complicated. Clearly, there was some blurring of the corporate entities. Re/Max and Vista Homes maintained adjoining offices, and James Bramblett was closely involved with the operation of both companies. The homeowners contend that James Bramblett's knowledge and conduct for Vista Homes can be imputed to Re/Max.

■ In support of this argument, the homeowners rely heavily on *Germania Safety Vault & Trust Co. v. Driskell*, 66 S.W. 610 (Ky.1902),[4] in which the president of a trust company was also president of an insolvent bank. The former Court of Appeals held that, because of the dual presidency, knowledge of the bank's condition could be imputed to the trust company. However, the issue in *Germania Safety Vault* involved a claim against the trust company for negligently investing money in the bank. The imputed knowledge of the bank's precarious financial position was relevant to show the breach of duty by the trust company. *Id.* at 612–13.

---

4. In a footnote, Re/Max suggests that the Youngs' citation to *Germania Safety Vault & Trust Co. v. Driskell*, is improper because the case was originally designated "Not to be officially reported." While it has been suggested that "not to be officially reported" cases are not binding authority, *Midland–Guardian Co. v. McElroy*, 563 S.W.2d 752, 755 (Ky.App.1978), we conclude that the citation to the case is not improper. The "not to be officially reported" designation merely involved the former Court of Appeals' decision to not publish an opinion in the official Kentucky Reports. Unlike the blanket prohibition of citation to unpublished cases in CR 76.28(4)(c), the designation did not prohibit Kentucky courts from citing such opinions. *Germania Safety Vault* is published in the Southwestern Reporter, which is now regarded as Kentucky's official reporter. Furthermore, the case was cited without qualification in three later and officially reported cases, *Security Trust Co. v. Appleton*, 303 Ky. 328, 197 S.W.2d 70 (Ky.1946); *Bryan v. Security Trust Co.*, 296 Ky. 95, 176 S.W.2d 104 (Ky. 1943); and *Gee v. Womack*, 203 Ky. 718, 263 S.W. 6 (Ky.1924). And finally, the use of "not to be officially reported" designation ended after 1910, long before the adoption of CR 76.28(4)(c). In the absence of any clearer statement of policy from our Supreme Court, we conclude that CR 76.28(4)(c) does not prohibit citation to opinions rendered by the former Court of Appeals and designated as "not to be officially reported."

In the present case, James Bramblett's knowledge as president of Vista Homes would not implicate any duties owed by Re/Max. First, Re/Max is not liable for the warranty claims, as that is a contractual duty owed by Vista Homes to the homeowners. Likewise, the code violation claims arise only from Vista Homes' duties in the performance of its contract.

And most importantly, Re/Max would only be subject to a misrepresentation claim if it or its agents knowingly or recklessly made a material misrepresentation upon which the homeowners were induced to rely. *Rickert*, 996 S.W.2d at 468. But as Re/Max points out, its contracts with the homeowners expressly disclaim the accuracy of the information provided by its agents. While James Bramblett's misrepresentations may have incidentally benefited Re/Max, the trial court correctly concluded they were primarily for the benefit of Vista Homes, the builder and seller of the houses. Thus, even if James Bramblett's knowledge is imputed to Re/Max, the homeowners cannot show that they reasonably relied upon any representations made by Re/Max. Consequently, the trial court properly granted directed verdicts on the claims against Re/Max.

## COMPENSATORY DAMAGES

■ The homeowners contend the trial court erred by reducing their compensatory damages for misrepresentations to $1.00. We disagree. The trial court found that none of the homeowners had proven any diminution in the values of their property. The trial court further found that the Youngs had not proven any repair costs, and the jury separately awarded repair costs to the other homeowners for the code violation and the breach of warranty. Consequently, the trial court concluded the homeowners were only entitled to nominal damages on the misrepresentation counts. But at both trials, the juries

returned significant awards for misrepresentation: $3,000.00 at the Youngs' trial and $1,000 to each homeowner at the second trial. Upon Vista Homes' motion, the trial court reduced the misrepresentation judgments to $1.00 each.

■ The Youngs contend that the trial court erred in reducing the awards because Vista Homes failed to object at the time the jury returned the verdicts. When a jury renders an incomplete, irregular, or ambiguous verdict, the error must be brought to the trial court's attention while the jury is available or it is waived. *Oldham v. Adkisson*, 448 S.W.2d 55 (Ky. 1969); *Breathitt Funeral Home v. Neace*, 437 S.W.2d 490 (Ky.1969). But in this case, Vista Homes does not contend that the juries' verdicts were incomplete, irregular, or ambiguous. Rather, it argues that the verdicts were excessive in light of the trial court's instruction that nominal damages are a "trivial sum of money." Consequently, Vista Homes' post-trial motions for a judgment notwithstanding the verdict were timely. CR 50.02.

The homeowners primarily argue that the juries' awards of "nominal damages" were not excessive, and that the trial court erred in reducing those awards to $1.00. They rely heavily on *Walsh v. Kennedy*, 463 S.W.2d 318, 321 (Ky.1971), in which the former Court of Appeals affirmed an award of $1,000.00 in nominal damages. We consider *Walsh* to be of limited value on this issue because the Court upheld the award without any discussion of the issues or citation to authority.

■ Moreover, *Walsh* directly conflicts with the more established authority holding that nominal damages are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages. *Stoll Oil Refining*

Co. v. Pierce, 343 S.W.2d 810, 811 (Ky. 1961). Nominal damages are usually awarded in some trivial amount, such as $1.00, but need not be limited to that amount. Id. See also 22 AM.JUR.2D Damages § 11 (2003 & 2006 Supp.), citing Romano v. U–Haul International, 233 F.3d 655 (1st Cir.2000). Nevertheless, we consider the $3,000.00 award in the Youngs' case to considerably exceed a trivial amount.

The Youngs also argue they were entitled to additional damages for loss of use of their land, discomfort, and annoyance resulting from the necessary replacement of the first septic system. But as noted above, the Youngs were only entitled to the lesser of either the diminution in the fair market value of their property or the restoration cost. Ellison, 32 S.W.3d at 70. Because the Youngs failed to prove such damages, they were not entitled to any additional damages for misrepresentation.

In their appeals, the Prevosts, the Rollers, the Suthers, and the Morelands contend the jury at the second trial awarded them more than nominal damages. They point out the jury's awards for the breach of warranty and code violation claims were less than the maximum awards allowed under the instructions. Thus, these homeowners conclude that the jury apportioned damages among the various claims.

■■■■ However, the trial court correctly noted the damages for the misrepresentation and the code violation claims were overlapping. For misrepresentation, a plaintiff is allowed the diminution in fair market value or a reasonable cost of repair which is allowed to measure a diminution in fair market value. Evergreen Land Co. v. Gatti, 554 S.W.2d 862, 865 (Ky.App. 1977). For the code violation, a plaintiff is allowed either the cost of repair to bring the property up to code compliance or payment of the diminution in fair market value of the property because of code infractions, whichever is less. Franz, 885 S.W.2d at 927. Since none of the homeowners presented evidence showing a diminution in the fair market value of their homes, the only evidence of damages was the cost of repair. The trial court concluded that the homeowners were fully compensated by the award for the code violation. Consequently, the court concluded that they were entitled to no more than nominal damages for the misrepresentation. We cannot find that this conclusion is clearly erroneous. For these reasons, we also reject Vista Homes' argument that the trial court improperly instructed the jury at the second trial on the issue of damages.

## PUNITIVE DAMAGES

■■■■ Vista Homes takes great issue with the juries' awards of punitive damages to the homeowners at both trials. It argues extensively the awards were excessive in light of the trial court's findings that the homeowners were entitled to no more than nominal damages on the misrepresentation claims. However, it is well established that a nominal award of compensatory damages is sufficient to support an award of punitive damages. Commonwealth, Department of Agriculture v. Vinson, 30 S.W.3d 162, 166 (Ky.2000); Fowler v. Mantooth, 683 S.W.2d 250, 252 (Ky. 1984); and Louisville & Nashville Railroad Co. v. Ritchel, 148 Ky. 701, 147 S.W. 411, 413–14 (Ky.1912). In both cases, the juries were authorized to award punitive damages notwithstanding the nominal awards of compensatory damages.

■■■■ The more fundamental question is whether the trial court properly allowed the jury to consider an award of punitive damages. Such damages are given to the plaintiff over and above the full compensation for his injuries, for the pur-

pose of punishing the defendant, teaching him not to do it again, and/or deterring others from following his example. *Hensley v. Paul Miller Ford, Inc.*, 508 S.W.2d 759, 762 (Ky.1974). The most difficult aspect of these cases is whether Vista Homes intentionally concealed facts about the sufficiency of the septic systems, or whether it simply made a good faith, but reckless mistake about the legal requirements for the septic systems. Either finding would be sufficient to support the jury's verdict on the misrepresentation claims. But the mere fact that an act is intentional or reckless does not justify punitive damages absent a finding that Vista Homes' conduct amounted to fraud, oppression, malice, or gross negligence. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App.2001).

■ At both trials, the court instructed the juries to award punitive damages against Vista Homes only if it found that Vista Homes acted toward the buyers with fraud. As set forth in the jury instructions and in KRS 411.184(1)(b), "[f]raud means an intentional misrepresentation, deceit or concealment of material fact known to the Defendant and made with the intention of causing injury to the plaintiff." But furthermore, punitive damages for this type of fraudulent concealment are permissible only if the concealment itself caused damages independent of those flowing from the wrongful act attempted to be concealed. *Hardaway Management Co. v. Southerland*, 977 S.W.2d 910, 917 (Ky. 1998).

■ In the Youngs' case, Vista Homes replaced the defective septic system before they brought this action. There was no evidence the Youngs incurred any damages from the concealment apart from the jury's award of damages based on the breach of warranty. The other homeowners also recovered damages based

upon these code violations and the warranty claims. Moreover, even assuming that Vista Homes intentionally concealed information about the septic systems, there was no evidence that it did so with the intention of causing injury to the homeowners. Therefore, the trial court erred by instructing the jury on punitive damages.

## ATTORNEY FEES AND COSTS

■ Finally, all of the homeowners appeal from the trial court's orders regarding attorney fees and costs. Where an attorney fee is authorized by statute, the reasonableness of the claimed fee is for the trial court to determine, subject only to abuse of discretion. *Dingus v. FADA Service Co., Inc.*, 856 S.W.2d 45, 50 (Ky.App. 1993), *citing Woodall v. Grange Mutual Casualty Co.*, 648 S.W.2d 871 (Ky.1983). KRS 198B.130(1) permits any person damaged as a result of a violation of the building code to bring a private action for damages against the person who committed the violation. "An award may include damages and the cost of litigation, including reasonable attorney's fees."

■ In the Youngs' case, the trial court denied their request for attorney fees, noting that while the original system did not comply with the building code, Vista Homes replaced the system prior to the commencement of the action. The trial court further found no actionable code violation for the replaced septic system. Consequently, the court concluded that none of the Youngs' claimed attorney fees related to the initial code violation.

The Youngs contend the jury should have been allowed to determine if the repaired system was constructed in violation of the building code. If so, then they argue they would have been entitled to attorney fees based on that violation. But even if the replaced system violated the

building code, there was no evidence that they will incur any additional repair costs. In the absence of any proof of damages arising from the alleged code violation, we agree with the trial court that the Youngs were not entitled to an award of attorney fees under KRS 198B.130.

The award of attorney fees to the other homeowners is a different matter. Following the second trial, the homeowners prevailed on their related claims for misrepresentation, breach of warranty, and the code violation. However, the trial court concluded they are only entitled to attorney fees for the code violation. Consequently, the court limited their award to a percentage of their recovery for the code violation. The homeowners argue that their causes of action were so interrelated that it is impossible to separate the time spent on each. Since they prevailed on their code violation claim, the homeowners assert that they were entitled to their full attorney fees and costs.

■■■ To a certain extent, we agree. Although Kentucky has never specifically ruled on this issue, most other jurisdictions which have addressed this question support the homeowners' position. Generally, attorney fees must be apportioned between claims for which there is statutory authority for an award of attorney fees and those for which there is not. But where all of plaintiff's claims arise from the same nucleus of operative facts and each claim was "inextricably interwoven" with the other claims, apportionment of fees is unnecessary. *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1098 (Okla.1996); *Whiteside Estates, Inc. v. Highlands Cove, L.L.C.*, 146 N.C.App. 449, 553 S.E.2d 431, 443 (2001); *Akins v. Enterprise Rent–A–Car Co. of San Francisco*, 79 Cal.App.4th 1127, 94 Cal.Rptr.2d 448, 452 (2000); *Okwara v. Dillard Department Stores, Inc.*, 136 N.C.App. 587, 525 S.E.2d 481, 487 (2000);

*Hanover Insurance Co. v. Sutton*, 46 Mass.App.Ct. 153, 705 N.E.2d 279, 296 (1999); and *Regency Homes of Dade, Inc. v. McMillen*, 689 So.2d 1204 (Fla. 3d DCA 1997). We find this rule to be appropriate in this case.

■■■ The homeowners at the second trial established that Vista Homes violated the building code when it installed the inadequate septic systems for their homes. Their misrepresentation and breach of warranty claims arose out of the same facts and issues. To the extent the other claims were inextricably intertwined with the code violation claims, the trial court was not required to apportion attorney fees and costs to only the statutory claim. On the other hand, even if punitive damages were warranted in this case, such a claim involves proof of additional conduct showing intent to defraud. Consequently, the trial court could reasonably exclude such damages from its award of attorney fees under KRS 198B.130. Because the trial court erroneously concluded that apportionment was required, the award of attorney fees must be remanded for a new calculation under the proper standard.

## CONCLUSION

In conclusion, we compliment the trial court on its deft handling of this complex litigation. The trial court managed to keep the individual parties' claims separate while conducting consolidated discovery and trials. For this reason, we are convinced that the trial court did not err in consolidating the claims of the second group of homeowners at a single trial, or by allowing those homeowners to assert the same claims at the close of all the proof. For the most part, we conclude that the trial court properly instructed the jury. We find that the trial court properly dismissed the claims against Re/Max. Furthermore, we find no reversible error from the dismissal of the negligence *per se*

claims against Vista Homes or the misrepresentation claims against James Bramblett and Fred Bramblett.

However, we find that the trial court erred in two aspects. First, we conclude there was no evidence showing that Vista Homes intended to defraud the homeowners. Consequently, the trial court erred by instructing the juries on punitive damages. And second, we find the trial court erred by apportioning attorney fees to the second group of homeowners based only on their recovery for the building code violations. We conclude that they were entitled to recover attorney fees and costs based upon all claims arising out of those same facts and evidence.

Accordingly, the judgments of the Hardin Circuit Court are affirmed in part, reversed in part, and remanded for entry of new judgments as set forth in this opinion.

ALL CONCUR.